[No. 43811. En Banc. January 29, 1976.]

GEORGE KINNEAR, ET AL, *Respondents,* v. THE HERTZ CORPORATION, *Appellant.*

*Joseph D. Holmes, Jr.* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow*), for appellant.

*Slade Gorton, Attorney General,* and *William D. Dexter, Special Assistant,* for respondents.

HUNTER, J.—This case concerns the validity of article 8 of the Multistate Tax Compact, RCW 82.56.010-.050, and the application of its joint audit provisions to corporations, such

as the appellant Hertz Corporation, that operate multistate businesses.

Article 8 of the Multistate Tax Compact states:

1. This article shall be in force only in those party states that specifically provide therefor by statute.

2. Any party state or subdivision thereof desiring to make or participate in an audit of any accounts, books, papers, records or other documents may request the commission to perform the audit on its behalf. In responding to the request, the commission shall have access to and may examine, at any reasonable time, such accounts, books, papers, records, and other documents and any relevant property or stock of merchandise. The commission may enter into agreements with party states or their subdivisions for assistance in performance of the audit. The commission shall make charges, to be paid by the state or local government or governments for which it performs the service, for any audits performed by it in order to reimburse itself for the actual costs incurred in making the audit.

3. The commission may require the attendance of any person within the state where it is conducting an audit or part thereof at a time and place fixed by it within such state for the purpose of giving testimony with respect to any account, book, paper, document, other record, property or stock of merchandise being examined in connection with the audit. If the person is not within the jurisdiction, he may be required to attend for such purpose at any time and place fixed by the commission within the state of which he is a resident: *Provided,* That such state has adopted this article.

4. The commission may apply to any court having power to issue compulsory process for orders in aid of its powers and responsibilities pursuant to this article and any and all such courts shall have jurisdiction to issue such orders. Failure of any person to obey any such order shall be punishable as contempt of the issuing court. If the party or subject matter on account of which the commission seeks an order is within the jurisdiction of the court to which application is made, such application may be to a court in the state or subdivision on behalf of which the audit is being made or a court in the state in which the object of the order being sought is situated.

The provisions of this paragraph apply only to courts in a state that has adopted this article.

5. The commission may decline to perform any audit requested if it finds that its available personnel or other resources are insufficient for the purpose or that, in the terms requested, the audit is impracticable of satisfactory performance. If the commission, on the basis of its experience, has reason to believe that an audit of a particular taxpayer, either at a particular time or on a particular schedule, would be of interest to a number of party states or their subdivisions, it may offer to make the audit or audits, the offer to be contingent on sufficient participation therein as determined by the commission.

6. Information obtained by any audit pursuant to this article shall be confidential and available only for tax purposes to party states, their subdivisions or the United States. Availability of information shall be in accordance with the laws of the states or subdivisions on whose account the commission performs the audit, and only through the appropriate agencies or officers of such states or subdivisions. Nothing in this article shall be construed to require any taxpayer to keep records for any period not otherwise required by law.

7. Other arrangements made or authorized pursuant to law for cooperative audit by or on behalf of the party states or any of their subdivisions are not superseded or invalidated by this article.

8. In no event shall the commission make any charge against a taxpayer for an audit.

9. As used in this article, "tax," in addition to the meaning ascribed to it in Article II, means any tax or license fee imposed in whole or in part for revenue purposes.

In 1972, eight states, including Washington, set up the Multistate Tax Commission in accordance with article 8, and designated it as their lawful agent in the area of sales and use tax audits. In May 1972, the commission informed Hertz of this development and demanded that Hertz make available, pursuant to article 8, the records and other items necessary for the determination of Hertz' sales and use tax liability in the various states. Hertz resisted this demand and in June 1972, respondents Kinnear and the Multistate Tax Commission commenced an action for declaratory

judgment. On January 17, 1975, the trial court granted respondents' motion for summary judgment and thus held that the Multistate Tax Commission has the authority to conduct joint sales and use tax audits for the member states pursuant to article 8 of the Multistate Tax Compact.

Appellant Hertz Corporation appeals from this decision. It initially contends that because the compact as a whole is unconstitutional and because article 8 cannot be separated from the compact, it was therefore error for the trial court to sustain the constitutional validity of article 8 alone. We reject this contention for two reasons.

First, the specific issue before the trial court was whether or not the commission has the power and authority to conduct a sales and use tax audit of Hertz pursuant to article 8. As a result, the only relevant part of the compact was article 8, and, by implication, the articles necessary for its implementation, *e.g.*, article 6, which sets up the commission. None of the articles of the compact except article 8 has any direct connection with the authority of the commission to conduct interstate audits. For example, articles 3 and 4 deal with state income taxes and article 7 is concerned with uniform regulations and forms. Article 8 is determinative as far as the joint audit functions of the commission are concerned. Therefore, the trial court properly limited its consideration to article 8 and, by implication, the articles that support article 8.

Second, because the validity of article 8 could be considered alone under the doctrine of severability, *see* *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972), we reject appellant's argument that the constitutionality of article 8 must be determined by looking at the compact as a whole. The compact itself indicates an intent to preserve and enforce so much of the compact as is constitutional. *See* Multistate Tax Compact, article 12.[1] Also, the joint

---

[1]Article 12 of the Multistate Tax Compact states:

"This compact shall be liberally construed so as to effectuate the purposes thereof. The provisions of this compact shall be severable and if any phrase, clause, sentence or provision of this compact is declared

audit provisions fulfill the first listed purpose of the compact contained in article 1 because when the commission acts pursuant to article 8, it directly "[f]acilitate[s] proper determination of state and local tax liability of multistate taxpayers . . ." The legislature undoubtedly would have approved article 8 and its implementing provisions without regard to the validity of other compact provisions. Because any potentially invalid compact provisions would be severable in any event, the trial court did not err in limiting its ruling to article 8.

Appellant's next contention presents the major issue in this appeal. Appellant contends that the provisions of the Multistate Tax Compact implementing joint audits pursuant to article 8 constitute an unconstitutional interstate agreement. Appellant argues that in the absence of congressional approval, the joint audit provisions violate U.S. Const. art. 1, § 10, clause 3, which provides as follows:

> No state shall, without the consent of the congress . . . enter into any agreement or compact with another state, or with a foreign power . . .

This language has not been literally applied, however, and we hold that the provisions implementing article 8 do not constitute an unconstitutional agreement between states. The compact provisions in question are consistent with the practical interpretation given by the United States Supreme Court to U.S. Const. art. 1, § 10, clause 3.

■ The language in U.S. Const. art 1, § 10, clause 3 was authoritatively construed in *Virginia v. Tennessee*, 148 U.S. 503, 37 L. Ed. 537, 13 S. Ct. 728 (1893), a case involving the validity of an interstate compact that settled a bound-

---

to be contrary to the Constitution of any state or of the United States or the applicability thereof to any government, agency, person or circumstance is held invalid, the validity of the remainder of this compact and the applicability thereof to any government, agency, person or circumstance shall not be affected thereby. If this compact shall be held contrary to the Constitution of any state participating therein, the compact shall remain in full force and effect as to the remaining party states and in full force and effect as to the state affected as to all severable matters."

ary dispute. The United States Supreme Court discussed the constitutional language above at some length even though the case was resolved on the ground that Congress impliedly had approved the compact. *See Virginia v. Tennessee, supra* at 525. With regard to the clause in question, the Supreme Court stated:

> Looking at the clause in which the terms "compact" or "agreement" appear, it is evident that the prohibition is directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States.

*Virginia v. Tennessee, supra* at 519. The Supreme Court approved this view of U.S. Const. art. 1, § 10, clause 3, shortly thereafter. In *Wharton v. Wise*, 153 U.S. 155, 170, 38 L. Ed. 669, 14 S. Ct. 783 (1894), it applied this same interpretation to a similar clause in the Articles of Confederation, which governed the interstate agreement at issue in that case. The rule of *Virginia v. Tennessee, supra,* has been accepted in many cases since then. *See, e.g., State v. Doe,* 149 Conn. 216, 223-25, 178 A.2d 271 (1962) (reciprocity agreement); *Bode v. Barrett,* 412 Ill. 204, 233, 106 N.E.2d 521 (1952) ("The [constitutional] provision does not inhibit those purely fiscal interstate agreements that facilitate interstate commerce and aid in execution of internal revenue policies."), *aff'd,* 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468 (1953); *Roberts Tobacco Co. v. Department of Revenue,* 322 Mich. 519, 526, 34 N.W.2d 54 (1948), quoting *Dixie Wholesale Grocery, Inc. v. Martin,* 278 Ky. 705, 711, 129 S.W.2d 181, *cert. denied,* 308 U.S. 609 (1939); *Ham v. Maine-New Hampshire Interstate Bridge Authority,* 92 N.H. 268, 270, 30 A.2d 1 (1943) (interstate bridge agreement); *Landes v. Landes,* 1 N.Y.2d 358, 365, 135 N.E.2d 562, 153 N.Y.S.2d 14 (Uniform Law and reciprocity agreement), *appeal dismissed,* 352 U.S. 948 (1956). We therefore feel that it is appropriate to follow the test described in *Virginia v. Tennessee, supra.*

The joint audit provisions under article 8 do not

increase the political power of the states. In fact, the Multistate Tax Commission, when it performs an audit, has no greater power than the individual states themselves. RCW 82.32.110 authorizes the State Tax Commission *or its duly authorized agent* to perform the type of audit described in article 8 of the compact. The Multistate Tax Commission undertakes an audit only upon the request of a sufficient number of member states (*see* Multistate Tax Compact, article 8, section 5) and disseminates the information made available thereby. The commission merely has the power to conduct an audit on behalf of the member states and for their convenience. It seems clear that this arrangement in no way increases the political power of the states with regard to the federal union.

Neither do the joint audit provisions "encroach upon or interfere with the just supremacy of the United States." *Virginia v. Tennessee, supra* at 519. The federal government may have the constitutional power to regulate the area of audits of interstate businesses, perhaps under the commerce clause of the United States Constitution, but it has yet to do so. Consequently, there is no federal supremacy with which the compact presently can interfere. "There are many matters upon which different states may agree that can in no respect concern the United States." *Virginia v. Tennessee, supra* at 518. We believe that the audit provisions of the Multistate Tax Compact fall within this category. Therefore, under the principles of *Virginia v. Tennessee, supra*, we hold that the joint audit provisions of the Multistate Tax Compact do not constitute the type of interstate agreement or compact that requires congressional approval pursuant to U.S. Const. art. 1, § 10, clause 3.

■■ Appellant Hertz Corporation also raises several other constitutional arguments. First, appellant contends that the Multistate Tax Compact violates the commerce clause, U.S. Const. art. 1, § 8, clause 3. Appellant argues that the regulation of interstate taxation is an area requiring a uniform national policy and one in which Congress has attempted to regulate; therefore, the states are pre-

cluded from entering a compact that extensively regulates this area. This preemption argument fails for two reasons, however. In the first place, although legislation concerning audits of interstate businesses may have been considered, as heretofore stated, Congress has not passed federal regulations in this area and therefore no preemption has occurred. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 139, 38 L. Ed. 2d 348, 94 S. Ct. 383 (1973). In the second place, we do not feel that auditing interstate businesses for purposes of state taxation is a subject matter requiring a uniform national policy. On the contrary, because of the diversity of state taxation schemes, it would seem that a uniform national policy concerning state audits is very undesirable. As a result, this is an area in which the states have authority to legislate. *See Southern Pac. Co. v. Arizona*, 325 U.S. 761, 767, 89 L. Ed. 1915, 65 S. Ct. 1515 (1967). The compact is merely a convenient vehicle through which legitimate state interests can be carried out.

■ Appellant also argues that the interstate audit provisions constitute an unreasonable interference and regulation of interstate commerce. We reject this argument because in this case the commission derives its powers from and operates on behalf of the member states—it is no more than a convenient method for exercising powers the states already legitimately possess. In a proper case, a state audit that aids the enforcement of a state tax might conceivably discriminate against interstate business and thus be an impermissible regulation of interstate commerce. In this case, however, the audit provisions do not impose impermissible discriminatory burdens on interstate business. They constitute no more of a regulation of commerce than the state taxes they are designed to enforce, and it is clear that state taxes meeting appropriate standards are not prohibited by the commerce clause. *See Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 44 L. Ed. 2d 1, 8, 95 S. Ct. 1538 (1975); *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 452, 3 L. Ed. 2d 421, 79 S. Ct. 357, 67 A.L.R.2d 1292 (1959); *Washington Tel. Co. v. State*, 77

Wn.2d 923, 928, 468 P.2d 687 (1970), *appeal dismissed,* 400 U.S. 986, 27 L. Ed 2d 436, 91 S. Ct. 461 (1971); *see also Alaska v. Arctic Maid,* 366 U.S. 199, 204, 6 L. Ed. 2d 227, 81 S. Ct. 929 (1961). For the reasons stated above, we feel that the audit provisions at issue in this case are not objectionable on commerce clause grounds.

 Second, appellant contends not only that the provisions of the compact violate commerce clause standards, but also that they violate the equal protection clause of the fourteenth amendment to the United States Constitution. Appellant argues that even though the compact provides that audit information shall be confidential, the lack of criminal penalties for disclosure equivalent to those under state law results in discrimination between interstate and intrastate taxpayers. Thus appellant is not complaining about its rights to confidential treatment in audits conducted pursuant to the compact, but rather is complaining about a possible difference in state criminal penalties for violations of confidentiality standards. Consequently, this is not a case of discrimination at all because there is no improper, unequal treatment of taxpayers. The compact itself provides interstate taxpayers with the same rights to confidential treatment as exist for intrastate taxpayers and, therefore, is not discriminatory. In addition, the compact also provides:

> Availability of information shall be in accordance with the laws of the states or subdivisions on whose account the commission performs the audit, and only through the appropriate agencies or officers of such states or subdivisions.

Multistate Tax Compact, article 8, section 6. This provision may be broad enough to include even state penalty statutes that appellant asserts are lacking. In either case, appellant's claim of discrimination, based on differences in state criminal penalties for disclosure, cannot be substantiated.

Appellant next argues that there is discrimination because the commission may appoint the personnel necessary to perform its functions "[i]rrespective of the civil service.

personnel or other merit system laws of any party state . . ." Multistate Tax Compact, article 6, section 1 (g). This contention is without merit. Intrastate taxpayers are also subject to audits by appointed agents, *see* RCW 82.32.110, and thus may be audited by personnel not covered by applicable state qualification statutes. Therefore, we find no discrimination on this ground under the compact where the commission is conducting its audit on behalf of and as an agency of the party states.

█ Appellant further argues that the commission's auditors *might possibly* be less familiar with state laws and less experienced than state auditors and, therefore, discrimination could result. This argument, however, relates to the administration of audits pursuant to article 8 and not to the issue in this case, which is the constitutionality of article 8 as written. It is premature for appellant to argue at this stage that the commission is performing its functions unconstitutionally. Consequently, the argument that the experience of commission auditors might result in discrimination against interstate taxpayers is without merit and we reject it.

We conclude that the equal protection violations asserted by the appellant above are without foundation. *See Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 35 L. Ed. 2d 351, 93 S. Ct. 1001 (1973).

█ Appellant's third constitutional contention is that it is denied due process because the compact does not provide an effective remedy, such as the statutory state criminal penalties, for the improper disclosure of confidential information. As heretofore mentioned, the state penalty laws indeed may be applicable to the Multistate Tax Commission. In any event, even if lack of an effective remedy is a denial of due process, appellant has failed to demonstrate that it is wholly without an adequate remedy for a breach of the confidentiality provisions. Therefore, its due process claim fails.

█ Likewise, appellant's final constitutional argument, that the compact's audit provisions violate the fourth

amendment to the United States Constitution, also fails. Because the commission is a validly constituted body, it unquestionably has the power and authority to conduct proper interstate audits. *See Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 90 L. Ed. 614, 66 S. Ct. 494, 166 A.L.R. 531 (1946). An inquiry would not be an unreasonable search and seizure as long as it is within the authority of the agency, not too indefinite, and reasonably relevant. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652, 94 L. Ed. 401, 70 S. Ct. 357 (1950). The compact itself does not violate appellant's right to be free from unreasonable searches and seizures under the Fourth Amendment.

Appellant's last argument is directed to the appropriateness of the summary judgment rendered below. Summary judgment is only proper if there are no issues as to any material facts. *See Capitol Hill Methodist Church v. Seattle*, 52 Wn.2d 359, 364, 324 P.2d 1113 (1958). Appellant presented no disputed facts in its affidavit that are material to the determination of the constitutionality of the Multistate Tax Commission. The issue was whether the commission, as constituted by the states pursuant to the compact, is constitutional. As such, there were no disputed material issues of fact because the questions presented were purely legal. Whether or not the commission will operate within the parameters of the compact is a fact question but it is not material to the legal issue of whether the interstate agreements setting up the commission, if carried out, will be unconstitutional under U.S. Const. art. 1, § 10, clause 3. Similarly, the proper administration of the audit provisions by the commission is a fact question not necessary for a determination of the constitutionality, under the commerce clause or equal protection clause, of those provisions as they are written. The trial court was faced with questions that were legal rather than factual in nature, and therefore any disputed facts were not material. Because the issues before the trial court were legal in nature, it was proper to decide the case on the motion for summary judgment. *See Zedrick v. Kosenski*, 62 Wn.2d 50, 54, 380 P.2d 870 (1963);

*Capitol Hill Methodist Church v. Seattle, supra; Hodgins v. State,* 9 Wn. App. 486, 491, 513 P.2d 304 (1973).

We have reviewed the constitutional challenges of the appellant and find them to be unpersuasive. The judgment of the trial court is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.