Gerald A. Lewis Comptroller Tallahassee
QUESTIONS:
1. May the Comptroller, on behalf of the State of Florida, enter into an agreement with an agency of a foreign government providing for reciprocity in the exchange of information and documents relative to regulation of the banking industry?
2. May the State of Florida enter into an agreement with an agency of a foreign government providing for such reciprocity?
SUMMARY:
The Comptroller is not statutorily authorized to enter into an agreement with an agency of a foreign government, on behalf of the State of Florida, providing for reciprocity in the exchange of information and documents relating to the regulation of the banking industry. The Legislature possesses the power to authorize such agreements so long as they do not tend to enhance the political power of the state in its relationship to the Federal Government and so long as such agreements do not encroach upon the supremacy of the United States, such that they contravene Clause 3, s. 10, Art. I, U.S. Const.
Your inquiry notes that in your capacity as head of the Department of Banking and Finance, you receive, process, and evaluate applications for authority to organize banks or trust corporations pursuant to s. 659.02, F. S., and applications for acquisition of majority stock or control in existing banks or trust companies in the State of Florida pursuant to s. 659.14, F. S. You further note that, upon the filing of such an application, the department is required to conduct an investigation under s. 659.03 or s. 659.14, F. S., depending upon the nature of the application. No question is asked concerning and no opinion is expressed as to s. 659.67, F. S.; this response is confined to the above-referenced statutes.
During the course of such investigations, the department has occasion to request information and documents from government agencies of foreign countries, including agencies which regulate the banking industry in foreign countries.
Thus, as Comptroller, you desire to enter into an informal agreement with a government agency of a foreign country on behalf of the state. The proposed agreement would provide for reciprocity in the exchange of information and documents relative to the regulation of the banking industry and would be in the form of a letter signed by the Comptroller and addressed to the foreign agency.
AS TO QUESTION 1:
It is the general rule that `[p]ublic officers have only such power and authority as are clearly conferred by law or necessarily implied from the power granted. Express statutory powers cannot be broadened by implication and usage and custom will not serve to enlarge such power and authority.' 67 C.J.S. Officers s. 190a; see
AGO 079-72. Moreover, this office has previously opined that `the power of the state to contract is a legislative prerogative and no board or officer can contract for it without legislative authority.' Attorney General Opinion 068-44; cf. AGO's 078-77 (concluding that tax collectors are not authorized to contract with banks or to appoint them as collection agents), 078-95 (concluding that a clerk of the circuit court has no statutory authority to contract for county insurance coverage), and 078-135 (concluding that a county tax collector had only such authority as conferred by statute and was accordingly unauthorized to enter into contracts regarding branch offices). Other authorities also hold that a `public officer can make only such contracts or agreements as are expressly or impliedly authorized. . . .' 67 C.J.S. Officers s. 190b.
Additionally, this office has concluded in a somewhat analogous context that, in the absence of statutory authorization, a public body lacks the authority to enter into a contract with an agency or institution of a foreign government. Attorney General Opinion 078-68. See also 81A C.J.S. States s. 31a (noting that the power to contract with another state is a power inherent in sovereignty, which resides in the Legislature, as does the contract power in general); accord: 81A C.J.S. States s. 155 (noting that the power to contract is the essence of sovereignty); see also 81A C.J.S.States s. 31b (noting that generally contracts between states are made by the acts of their respective legislatures). For examples of reciprocity legislation which expressly authorizes reciprocal agreements with an agency or subdivision of a foreign country, see
s. 626.792(1) and (2), F. S., `the department may enter into reciprocal agreements with the appropriate officials of any such . . . province . . .'; s. 370.20, F. S. (expressly authorizing the Governor to execute the Gulf States Marine Fisheries Compact [note that this compact was drafted to be effective subject to the consent of Congress as required by s. 10, Art. I, U.S. Const., andsee infra this letter for further discussion of these federal constitutional issues]); s. 372.971, F. S. (which expressly authorizes the Game and Fresh Water Fish Commission to enter into an agreement of reciprocity with Georgia officials); s. 370.18, F. S. (which expressly authorizes the Department of Natural Resources to enter into agreements of reciprocity); and s. 320.39, F. S. (which authorizes reciprocal agreements between the Department of Highway Safety and Motor Vehicles, Department of Transportation, and Public Service Commission and agencies of other states); cf. s. 163.01, F. S. (authorizing state and local governments to cooperate and enter into certain contracts with, among others, other states and the United States Government in the form of interlocal agreements on a basis of mutual advantage), s. 88.031(18) and part IV of ch. 88, F. S. (relating to uniform reciprocal enforcement of support and based on the doctrine of comity); and see generally 15A C.J.S. Conflict of Laws ss. 3, 4, and 5, and 81A C.J.S. States s. 29, as to the rule of comity and reciprocity in the relationships between and as applied to sovereigns, either states or nations.
I am aware of no constitutional or statutory provisions which would authorize the Comptroller or the Department of Banking and Finance to enter into an agreement for reciprocity with an agency of a foreign country for the purpose of exchanging information and documents relating to the regulation of the banking industry.
Section 4(d), Art. IV, State Const., merely states that:
 (d) The comptroller shall serve as the chief fiscal officer of the state, and shall settle and approve accounts against the state.
Furthermore, Title XXXVII of the Florida Statutes, chs. 654-665, relating to banks and banking, does not expressly authorize the department to enter into agreements for reciprocity with foreign countries. Although ss. 659.03 and 659.565 authorize the department to conduct investigations `within and outside of this state as it deems necessary,' the power to enter into a compact or agreement with other nations is not included. See also s. 659.67(1)-(12) (providing for regulation of international banks which conduct business in this state, but making no mention of reciprocity agreements).
In my opinion, pertinent provisions of ch. 659, F. S., noted above, must be read in recognition of the Legislature's prerogative to authorize agreements for reciprocity. Accordingly, the power to contract or make a compact or agreement for reciprocity with a foreign country or an agency thereof for the purpose of exchanging banking information and documents relating to the regulation of the banking industry cannot be implied from other powers granted the department in ch. 659. Your question is therefore answered in the negative.
AS TO QUESTION 2:
Your inquiry notes that s. 10, Art. I, U.S. Const., may prohibit such agreements between a state and a foreign power, and you thus inquire whether the State of Florida could enter into a reciprocal agreement with a foreign power. The authority and duty to make such determinations or to authorize such contracts rest with the Legislature alone, and the legal efficacy and validity of its acts are subject to judicial determination and resolution. In the absence of a request for my opinion from the appropriate officers of the Legislature on a question of law relating to the official duties of the Legislature, I am not authorized by law to give you an official opinion on your second question; neither may I authoritatively determine or resolve any question of the power of the Legislature to constitutionally enact any form of reciprocity legislation or agreements with any other states of the United States or foreign powers or states under the U.S. Constitution. However, I have researched the second question in an effort to be of assistance to you with regard to any legislation you may wish to propose to the Legislature and will set forth the general rules which would appear to govern such reciprocity legislation or agreements entered into pursuant to legislative authority.
It is the general rule that, as `members of the Union, states do not possess external sovereignty.' 81A C.J.S. States s. 16. See
AGO 075-283 (concluding that the jurisdictional power of the Department of Banking and Finance and the Comptroller, as agency head, is coextensive with the territorial boundaries of the State of Florida and limited thereby). See also American Fire Ins. Co. v. King Lumber and Mfg. Co., 77 So. 169 (Fla. 1917), aff'd250 U.S. 2 (1919).
However, reciprocity legislation is commonly employed by states to achieve a particular end. See, e.g., examples cited supra. Reciprocity has been defined as `the term employed in international law to describe the relation between states when each of them extends privileges and special advantages to the subjects of the other upon the condition that its own subjects be granted mutual and similar privileges and advantages by the other.' 45 Am. Jur.2d International Law s. 7; cf. s. 88.031(18) and part IV of ch. 88, F. S., and s. 659.67(4)(b), F. S.
Clause 3, s. 10, Art. I, U.S. Const., known as the Compact Clause, limits the ability of states to enter into agreements or compacts, providing:
 No state shall without the consent of the Congress . . . enter into an agreement or compact with another state or with a foreign power. . . . (Emphasis supplied.)
The U.S. Supreme Court has in recent cases adhered to the `rule of Virginia v. Tennessee' in passing on the validity of agreements or compacts alleged to violate the Compact Clause. In Virginia v. Tennessee, the application of the clause was limited to agreements that are `directed to the formation of any combination tending to the increase of political power in the States, which may encroach upon or interfere with the just supremacy of the United States.'148 U.S. 503 (1893).
Subsequent decisions have adhered to the rule that not all agreements made by a state with a foreign power require the consent of Congress. See, e.g., North Carolina v. Tennessee,235 U.S. 1 (1914), and New Hampshire v. Maine, 426 U.S. 363 (1976), the latter again holding that consent of Congress is necessary only in the case of a compact that enhances the political power of the member states in relation to the Federal Government.
And, most recently in U.S.S. Corp. v. Multistate Tax Comm.,54 L.Ed.2d 682 (1978), the vitality of this rule was reaffirmed. There the court held that a multistate tax compact formed for the purpose of facilitating uniformity of taxation (including performance of audits of interstate businesses by a multistate tax commission upon request of a member state) by member states did not violate the Compact Clause even though it had not received congressional approval. So holding, the court perceived no actual or potential interference with or encroachment upon federal supremacy. 54 L.Ed.2d 682, at 701. See also Kinnear v. Hertz Corporation, 545 P.2d 1186 (Wash. 1976), holding that a multistate compact providing for joint audits of certain corporations did not violate the Compact Clause.
The hypothetical nature of your inquiry, as to whether Florida may enter into an agreement for reciprocity with a foreign power, exacerbates the difficulty of response. Significantly, theMultistate Tax Commission court, noting that the Virginia v. Tennessee rule was followed in a long line of reciprocal legislation cases, stated:
 [T]he mere form of the interstate agreement cannot be dispositive. Agreements effected through reciprocal legislation may present opportunities for enhancement of state power at the expense of the federal supremacy similar to the threats inherent in a more formalized `compact.' [54 L.Ed.2d, at 700; emphasis supplied.]
Elsewhere, the same court also noted that `the pertinent inquiry is one of potential, rather than actual impact upon federal supremacy.' Id. at 701. It would therefore seem ill-advised to attempt analysis of hypothetical legislation whose impact, if any, upon the Federal Bank System or multitudinous other federal activities or operations is unknown, and which is of unknown form, for putative Compact Clause defects. Moreover, the construction of such agreements or compacts and a determination whether they transgress s. 10, Art. I, U.S. Const., is a matter of federal law and a judicial question for resolution by the Florida court or the Supreme Court of the United States.
Prepared by: Anne Curtis, Assistant Attorney General