*343 MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
Andrea Bennett, the State Auditor and Commissioner of Insurance for the State of Montana, appeals a Lewis and Clark County District Court order directing her to provide respondent Joseph Belth with access to data and analyses in appellant’s possession which relate to insurance companies. The issues on appeal are:
(1) whether a corporation, as well as a natural person, can assert the right to privacy exception in Section 9, Article II of the Montana Constitution (the “Right to Know”);
(2) whether a governmental agency can assert another’s Section 9, Article II privacy interest;
(3) whether public disclosure of the information would deny due process to insurance companies;
(4) whether the District Court erred in declaring Section 33-1-412(5), MCA, unconstitutional. Reversed and remanded.
Appellant is a member of the National Association of Insurance Commissioners (NAIC). The NAIC developed the Insurance Regulatory Information System (IRIS) to assist in the regulation of insurance companies throughout the nation. The NAIC issues IRIS reports to its members to assist them in reviewing the financial affairs of insurance companies. The reports cover two “phases”; (1) a statistical phase of calculations derived from data supplied by the insurance companies’ annual financial statements, and (2) an analytical phase which analyzes the information in the statistical phase. Appellant receives these reports on a regular basis. Appellant and amicus NAIC argue that Montana will not be allowed to participate in the IRIS system if appellant has to divulge the IRIS reports. The record shows that the NAIC publishes explanatory material stating that IRIS reports produced under the two phases are confidential and are furnished to the state insurance departments for regulatory use only.
Respondent Belth is an Indiana resident and the editor of a monthly publication entitled Insurance Forum. In March 1985, he sought access to the IRIS reports in appellant’s possession. Appellant initially indicated that respondent would be allowed access to the information. Subsequently, appellant refused to allow access to respondent.
In August 1985, respondent filed a complaint in the Lewis and Clark County District Court seeking a declaratory judgment that *344 would direct appellant to provide him with access to the IRIS information. Respondent relied principally upon Article II, Section 9 of the Montana Constitution (vulgarly called the “Right to Know”) as the basis for his complaint. That section provides:
“No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.”
In August 1985, the appellant filed her answer asserting, (1) that Section 33-1-412(5), MCA, gave her the right to withhold the information; (2) that release of the information could cause unwarranted injury to the insurance companies which were the subjects of the IRIS reports; (3) that the IRIS reports contain matters of individual privacy and are protected from access; and (4) that the IRIS reports contain investigative information which is not a matter of public record. Section 33-1-412(5), MCA, provides:
“The commissioner may withhold from public inspection any examination or investigation report for so long as he deems such withholding to be necessary for the protection of the person examined against unwarranted injury or to be in the public interest.”
In February 1986, the respondent Belth moved for summary judgment. In August 1986, the District Court entered judgment for respondent and ordered appellant to provide respondent with access to all IRIS documents in the possession of appellant. The court issued a memorandum explaining its decision and finding that, (1) a corporation (such as the insurance companies analyzed in the IRIS reports) could not assert the right to privacy exception to Article II, Section 9; (2) that no public official, by reason of his or her office or employment, could claim a right of privacy on behalf of an individual; (3) that “[t]here is a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection, regardless of legislation, special exceptions being made to accommodate the exercise of constitutional police power and other competing constitutional interests, such as due process;” (4) Section 33-1-412(5), MCA, (the statute which appellant relied upon in denying access to respondent) is clearly in conflict with the constitutional “Right to Know” (Section 9 of Article II) because it establishes an area of secrecy without any showing that there is a privacy interest involved, much less a privacy interest clearly exceeding the merits of public disclosure; (5) Section 33-1-412(5), MCA, is therefore uncon *345 stitutional on its face and unquestionably unconstitutional as applied. This appeal followed.
The first issue is whether a corporation, as well as a natural person, can assert the right to privacy exception to the constitutional “Right to Know.” This Court has already ruled on that question. In Mt. States, Etc. v. Dept. of Pub. Serv. Reg. (Mont. 1981), 634 P.2d 181, 38 St.Rep. 1479, we held that a corporation could assert the right to privacy exception.
“[T]he demands of individual privacy of a corporation as well as of a person might clearly exceed the merits of public disclosure, and thus come within the exception of the right to know provision.” Mt. States, Etc., 634 P.2d at 188. Therefore, the District Court incorrectly held that a corporation could not assert the privacy exception to the “Right to Know.”
The next issue is whether a governmental agency can assert the privacy interest of another. In Montana Human Rights Div. v. City of Billings (Mont. 1982), 199 Mont. 434, 649 P.2d 1283, 30 St.Rep. 1504, we allowed the City of Billings to assert the privacy interests of its employees. The City had argued that if it disclosed personal information about employees without their consent or a court order directing it to do so, it could be sued for revealing the information. We agreed that “potential economic injury is sufficient to establish standing.” Montana Human Rights Division, 649 P.2d at 1288. We hold that that same rule allows the appellant to assert the privacy rights of the insurance companies which are the subjects of the IRIS information. There is a possibility that the insurance companies could sue the State for appellant’s release of injurious information.
The next issue we address is whether the District Court erred in declaring Section 33-1-412(5), MCA, unconstitutional on its face and as applied in this case. We disagree that the statute is unconstitutional on its face. Section 33-1-412(5), MCA, allows appellant to withhold certain reports from public inspection where such withholding is “necessary for the protection of the person examined against unwarranted injury or [is] in the public interest.” We note that,
“[i]t is the duty of the courts to uphold the constitutionality of legislative enactments if such can be accomplished by reasonable construction.”
North Central Services, Inc. v. Hafdahl (Mont. 1981), [_Mont. -,] 625 P.2d 56, 58, 38 St.Rep. 372, 374. Moreover, “[t]he general rule is that whenever there are differing possible interpretations of *346 statute, a constitutional interpretation is favored over one that is not.” Department of State Lands v. Pettibone (Mont. 1985), [216 Mont. 361,] 702 P.2d 948, 956, 42 St.Rep. 869, 878.
To effect a constitutional interpretation, we hold that the Section 33-1-412(51, MCA, exception to public inspection is identical to, and coextensive with, the right to privacy exception to the “Right to Know.” In other words, appellant can only invoke the statutory exception when, in the words of Article II, Section 9, “the demand of individual privacy clearly exceeds the merits of public disclosure.” We find that the statutory language is simply an alternative expression of the constitutional privacy exception. We believe that this is a reasonable construction of the statute and it fulfills our duty to uphold the constitutionality of legislative enactments. The District Court stated that Section 33-1-412(5), MCA, was unconstitutional “as establishing an area of secrecy without any showing, legislatively or otherwise, that there is a privacy interest involved at all, much less a privacy interest that clearly exceeds the merits of public disclosure.” We disagree. The statute does not establish an area of secrecy. The statute does authorize appellant to make the initial decision, in line with the constitutional language, whether the privacy rights outweigh the need for public disclosure.
We also disagree with the lower court’s ruling that the statute was unconstitutional as applied in this case. The court gave no reasoning behind this assertion nor did the court perform the balancing test between the merits of privacy and disclosure. Apparently, the court found the statute unconstitutional as applied because the application allowed corporations a privacy exception to the “Right to Know” and the court had ruled that corporations could have no such exception. As we ruled above, corporations can assert the privacy exception. Therefore, the court’s ruling is in error, as we will develop further in this opinion.
Given the state of the record in this case, we find that this Court is in a proper position to balance the demands of the insurance companies’ privacy rights against the merits of public disclosure under the “Right to Know” provision. We believe that this is an instance when this Court “should exercise its undoubted authority to take the initiative in disposing of litigation as expeditiously as possible . . .” Sun River Cattle Co. v. Miner’s Bank of Montana (1974), 164 Mont. 479, 481, 525 P.2d 19, 20; quoting State ex rel. La France Copper Co. v. District Court (1909), 40 Mont. 206, 211, 105 P. 721, 723. As a preliminary step, we apply the two-part test this *347 Court has established for determining whether there exists a constitutionally protected privacy interest. That test is “whether the person involved had a subjective or actual expectation of privacy and whether society is willing to recognize that expectation as reasonable.” Missoulian v. Board of Regents of Higher Educ. (Mont. 1984), [207 Mont. 513,] 675 P.2d 962, 967, 41 St.Rep. 110, 116. We find that the insurance companies did have a subjective or actual expectation of privacy in the IRIS reports. As noted previously, NAIC explanatory material states that IRIS reports are confidential and are furnished to the states for regulatory use only. We also find that those expectations of privacy are reasonable. This Court has agreed that,
“[t]ime, place and status are factors in the reasonableness determination. But the determination should include consideration of all relevant circumstances, including the nature of the information sought. (Emphasis in original.)”
Missoulian, 675 P.2d at 968. Here, the NAIC warns of the possibility of inaccuracy in the IRIS reports. In this regard, NAIC explanatory material provides the following caveats:
“Two limitations of IRIS are the nonparticipation of some companies, and the keying of the analytical phase to a mechanical process that has some uncontrollable elements. The mechanical process is dependent on the accuracy and standardization of the annual statements filed by the insurers. The ratios cannot identify a misstatement of financial condition or, in certain situations, a statement not prepared in the proper format. Also, there exists the possibility of data processing errors.
“IRIS has been reasonably effective in distinguishing between troubled and sound companies. As previously stated, however, the statistical ratios are not in themselves determinative. They are subject to individual company circumstances. From previous sections of this chapter, the following caveats emerge:
“1. No state can rely on IRIS as its only form of surveillance.
“2. Important decisions — such as licensing — are not based on IRIS without further analysis or examination of the company concerned.
“3. Valid interpretation of ratio data depends to a considerable extent on the judgment of financial examiners. A company may be outside the usual range because of unusual accounting methods, or matters that have been corrected, or other circumstances.
*348 “5. The criteria for determining usual range values, and the usefulness of such ratios, . . . may not be valid for future experience in different economic periods. For this reason, the components of the ratios are reviewed annually and updated as necessary.”
The nature of this information increases the insurance companies’ expectations of privacy. Given the NAIC assurance of confidentiality and the admitted possibility of inaccurate information, we hold that the insurance companies’ expectations of privacy are reasonable. Therefore, there is a constitutionally protected privacy interest in the IRIS reports.
Finally, we reach the dispositive issue, the balancing test between privacy and disclosure. The demands of individual privacy are established by the affidavit of James Borchardt, the chief examiner of the State Insurance Department. His affidavit states, in part,
“3. That the information contained in the IRIS reports constitute a preliminary evaluation of the financial condition of the insurance company being reported on . . .
“4. That prior to taking any type of regulatory action against an insurance company a full and complete financial examination is necessary. That the IRIS documents in and of themselves do not adequately provide an accurate picture of the company’s financial condition. That to afford a company an opportunity to fully explain its financial condition it is necessary for a qualified examiner or examiners to review the books and records of the company in total.
“5. That the IRIS tests while initially pointing out potential problem companies are not dispositive of the issue of financial condition. That there exists a real possibility that a company identified by the IRIS tests as being outside the statistical limits is financially sound. To release the IRIS information without an adequate examination potentially jeopardizes the company’s business reputation. (Emphasis added.)”
We find that the privacy interest at stake is a substantial one. Parenthetically, we note that Borchardt’s affidavit supports our conclusion that the insurance companies’ expectations of privacy are reasonable.
Respondent argues that there is a substantial benefit in disclosing the IRIS reports. Respondent’s affidavit indicates the reports are useful in identifying companies experiencing financial difficulties or with imminent problems. We agree that there would be some public benefit to disclosure. We do not find that that benefit would outweigh the demands of individual privacy. The benefits of disclosure *349 are diminished by the availability of similar final, relatively non-subjective examinations made by the State. Montana’s regulatory scheme for insurance companies includes the following provisions. Section 33-1-401, MCA, provides that the insurance commissioner “shall examine the affairs, transactions, accounts, records, and assets of each authorized” domestic insurer at least once every three years and of other authorized insurers as he deems advisable. The commissioner may accept another state’s examination in lieu of making her own. Section 33-1-412, MCA, provides that the commissioner shall make a report of each examination and that such reports “shall comprise only facts appearing from the books, papers, records, or documents” or ascertained from sworn testimony. That section also states (1) that the entity examined shall receive a copy of the report, (2) for the possibility of a hearing on the report, and (3) for modifying the report as the commissioner deems proper. Section 33-1-412(5), MCA, also provides that the commissioner can withhold such reports, as we held above, in accordance with the constitutional “Right to Know” provision. Under Section 33-2-701, MCA, every authorized insurer must file an annual financial statement with the commissioner. Section 33-1-312, MCA, provides in part:
“(1) The commissioner shall enter in permanent form records of his official transactions, examinations, investigations, and proceedings and keep such records in his office. Such records and insurance filings in his office shall be open to the public inspection except as otherwise provided in this code with respect to particular records or filings.”
Finally, Section 33-2-721, MCA, requires each product liability insurer to file an annual, detailed business report, including information on premiums collected, earned premiums, incurred losses, loss reserves, etc. Those reports are available to the public for a reasonable fee. Section 33-2-722, MCA. The IRIS reports differ from the above described State examinations in their preliminary, subjective nature. It is this preliminary, subjective quality which particularly intrudes upon the privacy interest at stake.
Given the availability of other comparable information and the preliminary, subjective nature of the IRIS reports, we hold that the demands of individual privacy outweigh the merits of public disclosure. Thus, the appellant may properly deny respondent Belth access to the IRIS reports. A further result is that, contrary to the District Court order, Section 33-1-412(5), MCA, is constitutional as applied in this case to deny access to respondent.
*350 Reversed and remanded for entry of judgment in accordance with this opinion.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and WEBER concur.