NO. 91-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PACIFICORP, an Oregon Corporation,

Petitioner and Appellant,

-vs-

THE DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA and THE STATE TAX APPEAL
BOARD OF THE STATE OF MONTANA,

Respondent and Cross-Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Terry B. Cosgrove argued, Luxan & Murfitt,
Helena, Montana
Milo E. Ormseth argued and Peter R. Jarvis, Stoel,
Rives, Boley, Jones & Grey, Portland, Oregon

For Respondent:

David Woodgerd argued, Legal Counsel, Dept. of
Revenue, Helena, Montana

For Amicus Curiae:

Benjamin Frederick Miller, California Franchise Tax
Board, Multistate Tax Affairs Bureau,
Sacramento, California
Paull Mines, Multistate Tax Commission,
Washington, D.C.
John L. Alke, Hughes, Kellner, Sullivan & Alke,
Montana Taxpayer's Association, Helena, Montana

Submitted: May 21, 1992

Decided: August 21, 1992

FILED

AUG 27 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The Montana Department of Revenue (DOR), defendant and respondent in this Court, pursuant to Rule 23(h), M.R.App.P., appeals from two final orders of the District Court of the First Judicial District, Lewis & Clark County. The District Court reversed the State Tax Appeal Board's (STAB) admission of eight documents into evidence based on PacifiCorp's attorney-client privilege, and remanded the case to STAB for a new hearing. Appellant PacifiCorp cross-appealed from an order of the District Court which upheld STAB's denial of PacifiCorp's motion to compel the DOR to produce audit report documents generated by the Multistate Tax Commission.

The Montana Taxpayers Association (MTA) filed an amicus curiae brief supporting PacifiCorp's position. The Multistate Tax Commission (MTC) and the California Franchise Tax Board (FTB) submitted amicus curiae briefs in support of the DOR's position. We affirm in part and reverse in part.

The issues on appeal are:

1. Did the District Court err in affirming STAB's decision that the audit reports performed by California for MTC at the request of Petitioner are not subject to discovery?

2. Did the District Court err when it found that PacifiCorp did not waive its attorney-client privilege by producing eight documents during discovery?

**3.** Did the District Court err when it remanded this case to STAB for a new trial, based on the finding that eight documents were privileged and improperly admitted into evidence?

On October **6, 1986,** the parties submitted an agreed statement of facts, which is summarized as follows:

PacifiCorp is the parent of an affiliated group of corporations engaged in business within Montana. The DOR conducted an audit covering PacifiCorp's corporation license tax returns from **1974** to **1979.** On November **5, 1982,** PacifiCorp filed amended returns for refunds for the years **1971** through **1979.** In a letter dated June **3, 1983,** the DOR informed PacifiCorp of a proposed additional tax assessment for the tax years **1974** to **1979,** and also denied PacifiCorp's refund claims.

On June **28, 1983,** PacifiCorp protested the deficiencies asserted in the DOR's June **3, 1983,** letter. On June **29, 1983,** PacifiCorp also filed a complaint with STAB appealing the DOR's denial of refunds. On August **2, 1983,** pursuant to stipulation of the parties, STAB ordered that the refund appeal be held in abeyance pending a final decision on the tax deficiency protest.

The DOR obtained tax audit reports on PacifiCorp from tax authorities in Oregon, Idaho, and California, and determined that Montana was treating PacifiCorp's Montana operations differently than the other states.

PacifiCorp contacted MTC and requested that it review the proposed assessment of additional taxes by Montana. The MTC is an association of about 20 states including Oregon, Idaho, California,

3

and Montana. The MTC's amicus curiae brief states that the purpose of the Multistate Tax compact is to facilitate the following:

    1.    Equitable tax apportionment of multistate businesses,

    2.    Uniformity among various state tax systems,

    3.    Avoidance of duplicative taxation,

    4.    Discussion of apportionment disputes,

    5.    Avoidance of state judicial procedures by providing an informal forum for dispute resolution,

    6.    Taxpayer convenience,

    7.    Good relations between taxpayers and the state.

In response to the request, MTC requested California to conduct a special audit of PacifiCorp and to provide reports to MTC and its members.

Both Montana and California are signatories to an Agreement on Exchange of Information between MTC members stating:

    6. No information obtained pursuant to this Agreement shall be disclosed to any person not authorized by the laws of the undersigned states.

On May 3, 1985, the DOR sent PacifiCorp its final notice of additional tax due and denied all refund claims. On May 31, 1985, PacifiCorp appealed to STAB the DOR's additional tax assessment. This appeal was combined with the pending claim filed with STAB in 1983.

On July 15, 1985, PacifiCorp filed its first interrogatories and request for production of documents. Included within the request for production was a requirement that the DOR identify any and all documents which were "used, reviewed, created or considered

4

by the Department which played any part in the Department's decision that Western and Resource did not constitute a unitary business with Pacific." The DOR identified and produced the audit report which its staff produced. However, the DOR identified, but refused to produce the Oregon and MTC audit reports.

On November 21, 1985, PacifiCorp filed with STAB a motion to compel the DOR to produce the documents which it identified but failed to produce. The DOR's brief of January 7, 1986, opposed the motion to compel and directed PacifiCorp to request the documents directly from the individual states. On May 14, 1986, STAB denied the motion to compel.

PacifiCorp attempted to obtain copies directly from the states. Oregon provided copies of its audit report. The FTB provided certain portions of the requested information, but did not release any portions from the first & second audit reports (1981 and 1982) which included the following:

1.    Opinions, recommendations, judgments, or analysis in the audit narrative;

2.    Proprietary-type of information about the internal decision making process which it thought the taxpayer could use to manipulate the system (audit guidelines, audit criteria, operational criteria, and memos);

**3.**    Third-party information, unrelated to the taxpayer; or

4.    Protest hearing reports.

The FTB also withheld the entire third report dated May 24, 1984, and state that a fourth report dated May 29, 1985, had not

5

been specifically requested by PacifiCorp.  Its letter explained that the undisclosed audit information was confidential under California law and would not be given to the taxpayer (PacifiCorp). The **1984** and **1985** reports from FTB were given to Oregon, Montana, Idaho, and MTC.

The letter also stated that FTB was providing the following information from the first and second reports **(1981 & 1982):**

**1.**    Returns, reports, etc., that had been furnished to the department by the taxpayer;

**2.**    The factual data contained in audit narratives and supporting workpapers; and

**3.**    Authority relied upon to make adjustments.

PacifiCorp also attempted to obtain audit reports directly from MTC, but MTC refused to provide copies.

On June **12, 1986,** PacifiCorp filed a petition for judicial review.  It sought an order reversing STAB and allowing discovery of the audit reports.  The District Court found that it lacked jurisdiction and that a review would have to await final agency action.  STAB entered judgment for the DOR on February **28, 1989.** On November **22, 1989,** the District Court reversed and remanded this decision due to unlawful ex parte procedures on the part of STAB and the DOR.  On March **15, 1990,** STAB once again entered judgment for the DOR.  PacifiCorp appealed to the District Court, and the parties agreed to resolve the discovery and evidentiary issues before reviewing the merits.  The District Court found the information in the audit was privileged under **§ 15-1-601,** MCA, and

6

affirmed STAB's ruling.    This is the basis of PacifiCorp's cross-appeal.

During discovery, PacifiCorp inadvertently produced eight documents in response to the DOR's request.  PacifiCorp moved to exclude the documents under the attorney-client privilege, but STAB admitted the documents, finding that PacifiCorp had waived its privilege.  The District Court found that the eight documents were protected by the attorney-client privilege and remanded the case back to STAB for consideration without benefit of the information found in the documents.

## I.

Did the District Court err in affirming STAB's decision that the audit reports performed by California for MTC at the request of Petitioner are not subject to discovery?

There is no dispute that the availability of the MTC audit report is governed by Article VIII, § 6, of the Multistate Tax Compact.  Section 6 is adopted by and set forth in § 15-1-601, MCA:

> Information obtained by any audit pursuant to this article shall be confidential and available only for tax purposes to party states, their subdivisions, or the United States.  Availability of information shall be in accordance with the laws of the states or subdivisions on whose account the commission performs the audit and only through the appropriate agencies or officers of such states or subdivisions.

The dispute concerns the interpretation of the above statute, particularly the meaning of the second sentence.  The District Court found that the first sentence precludes a party state from distributing the MTC audit report to the taxpayer.

The DOR maintains that the first sentence authorizes dissemination of MTC audit information to the member states, their subdivisions, or the United States for tax purposes only. The DOR contends that such disseminated information must remain confidential because the first sentence establishes a statutory privilege for information obtained during an MTC audit. The DOR argues that the second sentence, regarding availability, does not defeat the privilege because it refers to dissemination to a state's taxing authority for tax purposes only. We disagree.

We conclude that the first sentence does not preclude the state from distributing the audit to the taxpayer. Although the first sentence of the statute provides that the audit information is confidential, the second sentence provides that it will be available according to state law. The second sentence states that the laws of each state or subdivision "on whose account the audit is performed" govern the availability of the audits. Montana was provided the report as a state "on whose account" the audit was performed, thus, the MTC audit is a Montana audit. The second sentence allows discovery of the audit report pursuant to Montana law. *See Multistate Tax Com'n v. Merck & Co., Inc.* (Or. 1980), 617 P.2d 1371, 1375, where the Oregon Supreme Court held that an MTC audit is essentially an Oregon audit performed under Oregon law by its agent, MTC. Montana disclosure laws apply. California privilege laws are not applicable, except in tax litigation arising in California.

The DOR contends that public disclosure would undermine MTC's ability to function as an informal forum for issue resolution. The DOR's inconsistent disclosure practices belie this argument. The DOR admitted during oral argument that MTC audits <u>supporting Montana tax assessments</u> are often released to the taxpayer. There is no logical basis for releasing the information in some cases, but not in others. Given the inexplicable disparate treatment, arguments that disclosure will undermine MTC or Montana's participation are not persuasive.

Because MTC derives powers from and on behalf of its member states, it exercises no more power than the states already possess. *Kinnear v. Hertz Corp.* (Wash. 1976), 545 P.2d 1186. The MTC's audit information is not subject to any greater burden of confidentiality than Montana law commonly imposes on tax information gathered by the DOR. Any further "confidentiality" violates Montana's constitutional right to know provision.[1]

<u>Constitutional Considerations</u>

The District Court did not discuss PacifiCorp's right to know under Article 11, § 9, of the Montana Constitution, nor did it

---

[1] Article 11, § 9, of the Montana Constitution, provides:
<u>Right to Know</u>: No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

address the right to privacy asserted by the DOR under Article 11, § 10 of the Montana constitution.'

Article 11, § 9, of the Montana Constitution is the law of this State and gives PacifiCorp the right to examine these public documents unless some individual privacy interest is threatened.

The DOR compares its refusal to disclose information obtained from MTC with the refusal of the state auditor in *Belth* v. *Bennett* (1987), 227 Mont. 341, 740 P.2d 638, to provide information received from a multistate insurance regulation association on the basis that the information was privileged under Montana statute. In *Belth*, a newspaper was trying to obtain information about an insurance company. We held in *Belth* that a state agency can assert the privacy interest of another. In *Belth*, the statute allowed the state auditor to withhold information because the insurance company's right to privacy outweighed the public's right to know. The instant case, however, is not a situation where a citizen is attempting to obtain a file about another taxpayer; here, the taxpayer is requesting its own file. The privacy exception within the right to know clause only applies when a member of the public is requesting information about someone else. The State cannot assert the privacy right of the person requesting the disclosure. If so, the State could circumvent the individual's right to know.

---

[2] Article 11, § 10, provides:
<u>Right to Privacy</u>. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

The DOR also contends that it is claiming the right to privacy for MTC and its members. It asserts that because California and MTC have not waived their privilege, Montana cannot disclose the information. The DOR points out that in *Belth* we held that corporations may assert the right of privacy because the right is not limited to individuals. The DOR explains that the MTC is analogous to a corporation, not a government agency, because it is an organization comprised of members. However, MTC's amicus brief supporting the DOR contradicts the DOR by stating that the MTC is "properly classified as an instrumentality of state government," and in this capacity "represents the executive branch of member states."

PacifiCorp's right to know prevails because no individual or corporate privacy is involved. Montana, California, and MTC cannot assert the right to privacy. They are not **"individuals"** under Montana law--they are government entities. The only privacy interest implicated here is the taxpayer's. We hold that MTC audit reports are subject to discovery under **§ 15-1-601,** MCA, consistent with PacifiCorp's constitutional right to examine public documents.

II.

Did the District Court err when it found that PacifiCorp did not waive its attorney-client privilege by producing eight documents during discovery?

PacifiCorp invoked the attorney-client privilege pursuant to **§ 26-1-803(2),** MCA, for eight documents produced during discovery. Rule **503,** M.R.Evid., provides that waiver of a privilege occurs if

11

"the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter," unless the disclosure itself is privileged.

PacifiCorp's production of eight attorney-client documents was in response to a voluminous document request covering thousands of documents. Montana law has not yet addressed whether inadvertent production in large document cases constitutes waiver. Application of the test for waiver of the attorney-client privilege outlined in *State* v. *Statczar* **(1987), 228** Mont. **446, 743** P.2d **606,** requires consideration of two elements: (1) the element of implied intention: and (2) the element of fairness and consistency. *Statczar* **743** P.2d at **610.** We will consider the element of implied intention first.

In *Statczar,* we defined waiver as "the intentional or voluntary relinquishment of a known right or conduct which implies relinquishment of a known right." This is consistent with the Commission Comments to Rule **503,** M.R.Evid., which provide that subjective intent is not the only factor for determining waiver-- conduct can also constitute waiver. The Comments also state that knowledge is not a required element for waiver. Here, it is clear that PacifiCorp did not have knowledge of the inadvertent production of the documents until later. However, we still must determine whether PacifiCorp's conduct at any time implied relinquishment of a known right.

12

In *Kuiper v. District Court* (1981), 193 Mont. 452, 460, 632 P.2d 694, 698, we stated that if no legal action is taken to protect against wide dissemination of the materials, voluntary relinquishment of the right could be found.[3] Here, wide dissemination did not occur, and PacifiCorp immediately requested the return of the documents as soon as it became aware of the production. PacifiCorp took prompt reasonable steps to protect its privilege. PacifiCorp objected to any use being made of these documents and refused to permit questions to be asked about them as soon as the issue arose during depositions. Voluntary relinquishment was not established by lack of legal action in this case.

Moreover, the mere inadvertent production itself is not enough to establish voluntary relinquishment of a known right. *Mendenhall v. Barber-Greene Co.* (N.D.Ill. 1982), 531 F. supp. 951, 954.

> We are taught from first year law school that waiver imports the "intentional relinquishment or abandonment of a known right." Inadvertent production is the antithesis of that concept.

*Mendenhall* at 955. *See also, United States v. Zolin* (9th Cir. 1987), 809 F.2d 1411, 1417 (secretary's delivery of tapes under the mistaken impression that they were blank did not waive privilege because the disclosure was "sufficiently involuntary and inadvertent as to be inconsistent with a theory of waiver"), *aff'd in relevant part and vacated in*

---

[3] *See also In re Grand Jury Proceedings* (4th Cir. 1984), 727 F.2d 1352, 1356 (efforts taken to rectify error and extent of disclosure are factors in determining waiver); *FDIC v. Ernst & Whinney* (E.D.Tenn. 1991), 137 F.R.D. 14 (prompt objection and request for return of documents).

*part* (1989), 491 U.S. 554, 109 S. Ct. 2619, 105 L. Ed. 2d 469. Because PacifiCorp did not voluntarily relinquish a known right, an implied intention to waive the privilege cannot be found.

In addition to considering the element of implied intention, we must also consider the element of fairness and consistency. *Statczar* 743 P.2d at 610. In this case, PacifiCorp objected to use of the documents from the first time they were referred to during discovery. The DOR knew well in advance of trial that use of the documents was an issue, and therefore, should not be surprised or unprepared because of their exclusion. Fairness and consistency are served by the exclusion of the privileged documents.

Accordingly, we affirm the District Court's conclusion that PacifiCorp did not waive its attorney-client privilege when it inadvertently produced eight documents during discovery.

### III.

Did the District Court err when it remanded this case to STAB for a new trial, based on the finding that eight documents were privileged and improperly admitted into evidence?

When reviewing conclusions of law by an agency, Workers' Compensation Court, or a trial court the standard of review is whether the tribunal's conclusions are correct. "The reasoning for simply determining if the court's conclusions are correct is that no discretion is involved when a tribunal arrives at a conclusion of law -- the tribunal either correctly or incorrectly applies the

14

law." *Steerv. Dept. of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. We find that the District Court correctly applied the law.

The District Court's review of STAB's agency findings is governed by § 2-4-704(2), MCA. The District Court properly noted that the statute allows reversal of an agency decision "where such decision violates constitutional or statutory provisions or is affected by other error of law." *See* § 2-4-704(2)(a)(i) and (iv), MCA. The District Court found that the admission of the eight documents violated PacifiCorp's statutory right to claim the attorney client privilege pursuant to § 26-1-803, MCA.

We must determine whether the above statutory violation prejudiced substantial rights of the appellant. Section 2-4-704(2), MCA. If substantial rights were prejudiced, then reversal is appropriate. *See Frasceli v. State Dept. of Revenue* (1988), 235 Mont. 152, 766 P.2d 850.

> The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict.

*Brodniakv. State* (1989), 239 Mont. 110, 779 P.2d 71 (quoting *Statev. Gray* (1983) 207 Mont. 261, 268, 673 P.2d 1262, 1266).

After reviewing the record, we conclude that there is a reasonable possibility that the eight privileged documents contributed to STAB's decision. We hold that admission of the eight documents prejudiced substantial rights of PacifiCorp, and did not constitute harmless error.

15

We affirm the District Court's conclusions that PacifiCorp did not waive its attorney-client privilege and that remand to STAB was necessary. We reverse the District Court's conclusion that the MTC audit was not discoverable under Montana law.

This case is remanded to the State Tax Appeal Board for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
'Chief'Justice

_____

_____
William E Hunt

_____

_____
Karla M. Gray
Justices

16

Justice John Conway Harrison dissenting.

I totally disagree with the majority's reasoning in this opinion and therefore dissent to its holding herein.

_____
Justice