No. 98-216

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 133


GREAT FALLS TRIBUNE COMPANY, INC.,

Petitioner and Appellant,

v.

RICK DAY, and THE STATE OF MONTANA,
DEPARTMENT OF CORRECTIONS,

Respondents and Cross-Appellants.

ORIGINAL PROCEEDING


COUNSEL OF RECORD:

For Appellant:

Peter Michael Meloy (argued); Meloy & Morrison;
Helena, Montana

For Respondent:

Diana P. Leibinger-Koch (argued), Matthew A. Robertson, and
David L. Ohler; Montana Department of Corrections;
Helena, Montana

For Amicus:

Dal Smilie, Chief Legal Counsel; Montana Department of
Administration; Helena, Montana


Heard:  May 26, 1998
Submitted: May 26, 1998
Decided: May 29, 1998
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1   The petitioner, Great Falls Tribune Company, Inc., filed a petition in the District Court for the First Judicial District in Lewis and Clark County in which it sought an order restraining the respondent, Rick Day, as Director of the Department of Corrections for the State of Montana, from excluding members of the public from meetings of the Department's Private Prison Screening and Evaluation Committee.  The District Court held that neither the petitioner nor other members of the public had a right to observe the deliberations of the committee during the negotiation phase of its work, but that once its negotiations had been completed, the process by which it arrives at its conclusions must be open to public observation.  Both the Tribune and the Department of Corrections appeal from the District Court's order.  We reverse that part of the District Court order which excludes the petitioner and other members of the public from the committee's deliberations.

¶2   The issue on appeal is whether § 18-4-304, MCA, as applied by the Director of the Department of Corrections to the facts in this case, violates Article II, Section 9, of the Montana Constitution, which guarantees to the people of Montana the right to examine documents and observe deliberations of all public bodies or agencies of state government.

FACTUAL BACKGROUND

¶3   In 1997, the Montana Legislature enacted §§ 53-30-601 to -611, MCA, which authorize the Department of Corrections to contract for the private operation of correctional facilities in Montana.  Section 53-30-605, MCA, requires that, prior to contracting for services with a private correctional facility, the Department must publish a request for proposals which "must include a description of the long-range correctional needs, objectives, and goals of the department and the state."  That statute also provides a detailed list of the information that each proposal must include.

¶4   On December 1, 1997, the Department published a Request for Proposal (RFP) for the development and operation of a 500-bed private, adult male prison facility pursuant to § 18-4-304, MCA, §§ 53-30-601 to -611, MCA, and § 2.5.602, ARM.  The RFP also stated, at paragraph 1.1.4.2, that "[p]rior to award of contract, proposal information submitted in response to this RFP will be disclosed only to the persons participating in the evaluation or contracting process.  The proposals will not be publicly opened."  This provision of the RFP reflected the requirements of § 18-4-304(4), MCA, and § 2.5.602, ARM.  Section 18-4-304(4), MCA, is part of the Montana Procurement Act which was enacted by the Legislature in 1983.  Section 18-4-302, MCA, provides that all state contracts for services must be awarded by a selection process provided for in the Procurement Act.  Section 18-4-303, MCA, provides for awards following competitive sealed bidding, and § 18-4-304, MCA, provides for awards following competitive sealed proposals. Subparagraph (4) of that statute provides as follows:

> Proposals must be opened so as to avoid disclosure of contents to competing offerors during the process of negotiation. A register of proposals must be prepared in accordance with rules adopted by the department and must be open for public inspection after contract award. After the contract is executed, proposal documents may be inspected by the public, subject to the

limitations of the Uniform Trade Secrets Act, Title 30, chapter 14, part 4.

Section 18-4-304(4), MCA.

¶5    In response to the Department's RFP, five private companies submitted proposals for
construction of a private correctional facility in Montana.  Rick Day, Director of the
Department of  Corrections, appointed a twenty-one-member committee to review the
proposals, evaluate them, and make recommendations to him regarding which company to
select.

¶6    At the committee's orientation meeting on March 16, 1998, Day instructed the
committee that:

> Our goal is to select a new member of our partnership, a private prison
> contractor, through a neutral and objective process -- a process which provides
> the best opportunity for Montana to obtain the most effective, professional,
> public safety-conscious, efficient prison service and which also provides
> evidence of strong local support. . . .
>
>        . . . .
>
> This brings us to why we are here today.  Each of you have been
> assigned to this extremely important committee.  Your task will be to critically
> evaluate each submission.  While performing your other jobs some of you
> must be prepared to make this assignment a three-or four-month priority.
>
>        . . . .
>
> State law requires that proposals be opened in a manner that avoids
> disclosure of contents to competing offerors, and prohibits the discussion of
> proposals which might reveal information to competing offerors (§ 18-4-304,
> MCA).  What this means is that your work, evaluation, scoring and discussion
> is at this time confidential.  Consequently, you cannot discuss this information
> with parties outside of this committee.  In fact, if you are contacted you must
> advise the party that you cannot discuss the proposal information and you must
> immediately report this contact and any contact which may potentially
> influence the process to the Director's Office.  Although sometimes difficult
> to understand, this process is designed by law and recognizes the proposers'
> legitimate expectation of privacy in their proposals.  Once the contract is
> signed the proposals and related documents are open to public inspection.
>
>        . . . The work you do will have a lasting effect on Montana corrections
> well into the next century.

(Emphasis added.)

¶7    The Great Falls Tribune, Inc., is a daily newspaper circulated throughout the state of
Montana with its headquarters in Great Falls.  On April 3, 1998, it petitioned the District
Court to restrain Day and the Department's committee from holding its meetings in

private and to require that all papers associated with the meetings be open to public inspection. The Tribune alleged that Day's directive to the committee that its work be done privately violates its rights guaranteed by Article II, Section 9, of the Montana Constitution, by denying it the right to observe deliberations and examine documents of a public body.

¶8   In response, the Department contended that the public's right to observe the committee's deliberations and review its records, including proposals, was outweighed by the five vendors' rights to privacy in the information they had submitted. The Department contended that the proposals submitted by the five vendors included trade secrets and proprietary information and that the committee could not evaluate those proposals in public without revealing that information.

¶9   Following a hearing at which a reporter for the Tribune, two state officials, and three representatives from the private vendors testified, the District Court held that while the five vendors had no reasonable expectation of privacy after a contract has been awarded, they do have a reasonable expectation that their proposals will be kept confidential during the negotiation process. Without further analysis of the vendors' privacy interest, as opposed to the public's interest in open government, the District Court then concluded that during the negotiation phase of the committee's work the committee may do its work privately and deny the public access to the vendors' proposals. The District Court also concluded, however, that once the negotiations among the Department and the five vendors have been completed, the Department must open that part of the committee's deliberations which relate to its analysis of the proposals to public observation and make the vendors' proposals available for public inspection, subject to a trade secret exception. The District Court held that to the extent § 18-4-304, MCA, prohibited public observation or disclosure after negotiations have come to an end, it is unconstitutional.

¶10  The Tribune appeals that part of the District Court's order which allows the Department to conduct negotiations in private. The Department appeals that part of the District Court's order which opened its deliberations to public inspection prior to the time

that a contract is awarded.

### DISCUSSION

¶11  Does § 18-4-304, MCA, as applied by the Director of the Department of Corrections
to the facts in this case, violate Article II, Section 9, of the Montana Constitution, which
guarantees to the people of Montana the right to examine documents and observe
deliberations of all public bodies or agencies of state government?

¶12  Whether § 18-4-304, MCA, as applied to the facts in this case, is constitutional is a
question of law.  We review a district court's conclusion of law to determine whether it is
correct.  See State v. Small (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378.

¶13  Furthermore,

> [t]he constitutionality of a legislative enactment is prima facie presumed, and
> every intendment in its favor will be presumed, unless its unconstitutionality
> appears beyond a reasonable doubt.  State ex rel. Mills v. Dixon (1923), 66
> Mont. 76, 84, 213 P. 227, 229.  The question of constitutionality is not
> whether it is possible to condemn, but whether it is possible to uphold the
> legislative action which will not be declared invalid unless it conflicts with
> the
> constitution, in the judgment of the court, beyond a reasonable doubt.

> Fallon County v. State (1988), 231 Mont. 443, 445-46, 753 P.2d 338, 339-40.

¶14  The Tribune's petition is based on its asserted right to examine the documents and
observe the deliberations of public bodies.  Article II, Section 9, of the Montana Constitution, provides:

> No person shall be deprived of the right to examine documents or to
> observe the deliberations of all public bodies or agencies of state government
> and its subdivisions, except in cases in which the demand of individual privacy
> clearly exceeds the merits of public disclosure.

¶15  The Department's objection to the Tribune's inspection of its private prison proposals
and to the observation of its committee meetings is based on the aforementioned provision
in § 18-4-304, MCA, which provides that the contents of proposals are not to be disclosed
during the negotiation process, but only after a contract has been executed.  The Department
also contends that the proposals include trade secrets and proprietary information in which
the vendors who submitted the proposals have an actual and reasonable expectation of
privacy, and that on balance, that privacy interest is greater than the public's interest

in the inspection of those documents.

¶16   Although this controversy was submitted to the District Court on the assumption that the Department's committee is a public body or agency, and on the further assumption that the proposals are documents of a public body, the Department has argued, for the first time on appeal, that its committee may, in fact, not be a public body to which Article II, Section 9, applies.  While normally we would not consider an argument made for the first time on appeal, the logical first step in our analysis is to determine whether, in fact, this claim involves a public body or agency to which Article II, Section 9, would apply.  For that purpose, we need look no further than the definitions provided by the Montana Procurement Act, and our recent decision in Common Cause v. Statutory Committee (1994), 263 Mont. 324, 868 P.2d 604.  Article II, Section 9, applies, by its terms, to agencies of state government.  "Governmental body" is defined at § 18-4-123(11), MCA, as "a department . . . committee . . . or other entity, instrumentality, or official of the executive, legislative, or judicial branch of this state . . . ."

¶17   Pursuant to § 2-15-104, MCA, the Department is part of the executive branch of government.  The screening and evaluation committee is, therefore, a committee of the executive branch of government, and a "governmental body" for purposes of procurement. Since the committee has been defined by the Legislature as a "governmental body," it necessarily follows that it is an agency of state government to which Article II, Section 9, applies.  This conclusion is consistent with our recent decision in Common Cause, where we held that the committee established to recommend candidates for the office of Commissioner of Political Practices is a "public or governmental body."  We analogized to decisional law from the state of Michigan which concluded that an advisory committee appointed to assist in the selection of a university president was a "public body" for purposes of that state's open meetings act.  We stated:

>       Moreover, in a factually similar case, the Michigan Supreme Court
>    determined that a selection committee and its advisory subcommittees
>    organized to select a university president were "public bodies" under
>    Michigan's Open Meetings Act.   Booth Newspapers v. University of Michigan
>    (Mich. 1993), 507 N.W.2d 422, 429.   The Michigan definition of "public
>    body" focused on the entity's ability to exercise governmental or proprietary
>    authority.   The Michigan Supreme Court held that the selection of a public
>    university president constituted the exercise of governmental authority
>    regardless of whether the authority was exercised by the nominating

committee, the board or even the advisory subcommittees.  Booth, 507 N.W.2d
at 429.    The same reasoning applies to the selection of the Commissioner in
Montana.    The "public or governmental" nature of the Committee's purpose
is obvious.    Further, the Committee is created and organized by state statute
to perform its governmental function.

Common Cause, 263 Mont. at 331, 868 P.2d at 608 (emphasis added).

¶18  The Department contends that Common Cause is distinguishable from this case on the
basis that the committee with which that case was concerned was established by statute and
that the Department's committee was not established in that fashion.  However, the
Department misses the point of the Common Cause decision.  That decision was not based
upon the statutory authority for the committee.  That decision was based on the "public or
governmental" nature of the committee's responsibilities.  We conclude that the committee
established by the Department to screen proposals for the construction of a private prison
also involves governmental responsibility, and that based on not only the definition from the
Montana Procurement Act, but our reasoning in Common Cause, the committee does
constitute a public body and an agency of state government.

¶19  Furthermore, we conclude that the proposals submitted by private vendors to the
Department's screening and evaluation committee are documents of a public body or agency
within the meaning of Article II, Section 9.  Section 18-4-126(1), MCA (also part of the
Montana Procurement Act), provides that "[p]rocurement information is a public writing and
must be available to the public as provided in 2-6-102 and 18-4-304."  Section 2-6-102
provides that every citizen has a right to inspect public writings of the state.

¶20  Having concluded that the Department's screening and evaluation committee is a
public body and that the proposals which were submitted to it are public writings to which
Article II, Section 9, is applicable, we must next consider whether there is some exception
to the public's right to observe the committee's deliberations and inspect its records.  The
only exception provided for by the plain language of Article II, Section 9, arises when "the
demand of individual privacy clearly exceeds the merits of public disclosure."  We have
established the following test to determine whether there is a privacy interest which must be
considered:
      This Court applies a two-part test to determine whether a person has a

constitutionally protected privacy interest: whether the person involved had a subjective or actual expection of privacy and whether society is willing to recognize that expectation as reasonable.

Missoulian v. Board of Regents (1984), 207 Mont. 513, 522, 675 P.2d 962, 967.

¶21 We have previously held that corporations do have an interest in privacy protected by the Montana Constitution, and that a governmental agency can assert that right on behalf of the private interest. See Belth v. Bennett (1987), 227 Mont. 341, 345, 740 P.2d 638, 641.

¶22 The question in this case is whether the private vendors who submitted proposals had an actual expectation that all of the information in those proposals would be kept confidential. The Department contends that there was an actual expectation of privacy based on the assurances given in paragraph 1.1.4.2 of its RFP and the RFP's reference in paragraph 1.1.4.1 to § 18-4-304, MCA, and § 2.5.602, ARM.

¶23 The Tribune contends that there could have been no actual expectation of privacy based on either the assurances in the RFP or the statutory or regulatory provisions relied upon. The Tribune points out that the RFP, § 18-4-304, MCA, and § 2.5.602, ARM, all provide for ultimate disclosure of the proposal's contents once a contract has been executed, with the exception of trade secret information. The Tribune concedes that pursuant to § 18-4-304, MCA, and our prior decision in Mountain States Telephone & Telegraph Co. v. Department of Public Service Regulation (1981), 194 Mont. 277, 634 P.2d 181, the vendors do have a privacy interest in legitimate trade secrets which are an exception to the public disclosure requirements of Article II, Section 9, but that based on the Department's own representations to the vendors, they had no other expectation of privacy in the information included in their proposals.

¶24 The record in this case includes testimony from two state officials and three representatives from vendors who had submitted proposals. This testimony demonstrates the actual reasons for excluding the public from the committee's meetings and the vendors' actual expectations regarding ultimate disclosure of the proposals they submitted.

¶25 Sheryl Motl is a Bureau Chief in the Purchasing Bureau for the Department of Administration, and in that capacity works in the procurement process. She testified that it is important to the RFP process that the contents of proposals not be publicly scrutinized

until the State can complete its negotiation process. She explained that it is important that competitors not know what one another have proposed if the State is going to get "the best deal." She felt that if the process was open, the State would not be able to negotiate effectively. She conceded, however, that at the end of the negotiation process, after a vendor is chosen and a contract executed, the information included in the proposals would be open to public inspection, except for trade secrets or other proprietary information.

¶26 Janie Wunderwald is the Contract Manager for the Department of Corrections, and in that capacity prepared the Department's request for proposal. She testified that five companies responded to the request and provided twenty-six volumes of material, but that she knew of only one document in the twenty-six volumes which had been marked "trade secret." She contended that the information included in the proposals would jeopardize security at the correctional facility if made public, but also acknowledged that after the contract is executed, all the proposals, except for those parts which constitute trade secrets or which relate to public safety would be released to the public. She admitted that the only reason the evaluations cannot be opened now, rather than in the future, is that it would jeopardize the Department's ability to negotiate the best possible deal for the taxpayers of Montana.

¶27 Brad Wiggins is the Director of Business Development for the Corrections Corporation of America, which is one of the vendors submitting a proposal to the Department. Michael Murphy represents Management and Training Corporation, and Lawrence Barreras represents Cornell Corrections. Both of those companies also submitted proposals. All three gentlemen testified before the District Court. Although they all testified that they expected their proposals to be confidential during the negotiation phase, none of them testified that their companies would not have submitted a proposal had they known they would be publicly disclosed, and all acknowledged that when they submitted their proposal they were aware that, pursuant to law in Montana, the proposal would be subject to public inspection after a contract was executed.

¶28 It is clear from the language of the Department's RFP, the terms of § 18-4-304, MCA, § 2.5.602, ARM, and the testimony of the State's witnesses, that everyone involved

in this process and, most importantly, the vendors who submitted proposals, had every expectation that the information included in the proposals, except for trade secrets or matters related to security, would ultimately be available for public inspection. The only question was one of timing, and the matter of timing was not related to the question of privacy, but instead to the Department's concern that it get the "best deal."

¶29 While we are in no way critical of the Department's determination to get the "best deal" for the taxpayers of Montana, we must also necessarily conclude, based on the plain language of Article II, Section 9, and our prior decisions, that economic advantage is not a sufficient reason for denying the public the opportunity to observe the deliberations of public bodies and inspect public documents. Economic advantage is not a privacy interest.

¶30 The State's argument for privacy is analogous to the school board's argument in Great Falls Tribune v. Great Falls Public Schools (1992), 255 Mont. 125, 841 P.2d 502. In that case, the Tribune sought admission to a meeting of the board of trustees for the Great Falls public schools at which the board intended to discuss negotiations for a new collective bargaining agreement with teacher aides and library aides. The board contended that they were entitled to hold these meetings privately pursuant to § 2-3-203, MCA, which provided that meetings to discuss collective bargaining strategy need not be held publicly. The district court denied the Tribune access to the board's meetings based on the statutory provision. On appeal, the Tribune contended that the statutory exception was unconstitutional, in violation of Article II, Section 9, because it did not relate to individual privacy, but instead served a public agency's interest in privacy. We agreed. We held that:

> Article II, Section 9, of the Montana Constitution is unambiguous and capable of interpretation from the language of the provision alone. Great Falls Tribune v. District Court (1980), 186 Mont. 433, 437, 608 P.2d 116. Associated Press v. Board of Education (1991), 246 Mont. 386, 804 P.2d 376. In Associated Press, we noted Article II, Section 9, to be "unique, clear and unequivocal" and held that:
>
>> We are precluded, by general principles of constitutional construction, from resorting to extrinsic methods of interpretation.

Associated Press, 246 Mont. at 391, 804 P.2d at 379.

Great Falls Tribune, 255 Mont. at 129, 841 P.2d at 504.

¶31  We held that the board's asserted interest in effective collective bargaining did not involve a matter of individual privacy which would serve as an exception to the open meeting law and, therefore, that:

The collective bargaining strategy exception is an impermissible attempt by the Legislature to extend the grounds upon which a meeting may be closed.  We conclude that Sec. 2-3-203(4), MCA, is unconstitutional and the District Court is reversed.

Great Falls Tribune, 255 Mont. at 131, 841 P.2d at 505.

¶32  Likewise, the Department's committee meetings have not been closed in this case for reasons of privacy; they have been closed to gain economic advantage.  However, there is no exception provided in the plain language of Article II, Section 9, for the State's economic advantage.  As we noted in Great Falls Tribune, a public agency's desire for privacy does not provide an exception to the public's constitutional right to observe its government at work.

¶33  Furthermore, we conclude that the actual private vendors who are involved in this case had no reasonable expectation that the information included in their proposals, other than trade secrets, would remain confidential.  They were all informed and were aware, prior to submitting their proposals, that the proposals would ultimately be available for public inspection.  They were only led to believe that the proposals would be confidential while it was in the State's economic interest to avoid disclosure.  We conclude that in this case there is no privacy interest in the entirety of the vendors' proposals to balance against the merits of public disclosure.  We therefore conclude that the petitioner, Great Falls Tribune Company, Inc., has a constitutional right pursuant to Article II, Section 9, of the Montana Constitution, to observe the deliberations of the Department of Corrections Committee for Private Prison Screening and Evaluation and to examine its documents, including the proposals which have been submitted to it.  The only exception to this right relates to information in which there is a privacy interest.  That interest includes legitimate

trade
secrets, pursuant to our decision in Mountain States, and matters related to individual safety,
pursuant to our decision in State ex rel. Great Falls Tribune v. Eighth Judicial District
(1989), 238 Mont. 310, 777 P.2d 345. In other words, the Department can legitimately
withhold no more information from public scrutiny during the negotiation process that it can
withhold after the contract is executed. To the extent that § 18-4-304(4), MCA, or § 2.5.602,
ARM, require exclusion of the public, including the petitioner, from the committee's
meetings, or prevent the public's inspection of the committee's documents, other than as
previously provided, we conclude that those provisions violate Article II, Section 9, of the
Montana Constitution, and, therefore, are unenforceable as applied.

¶34 This case involves the perception of State officials that private negotiations are in the
State's short-term economic interest. However, the delegates to the Constitutional
Convention made a clear and unequivocal decision that government operates most
effectively, most reliably, and is most accountable when it is subject to public scrutiny. It
is that fundamental principle of this State's constitutional law which is the basis for this
Court's decision.

¶35 While on any given occasion there may be legitimate arguments for handling
government operations privately, the delegates to our Constitutional Convention concluded
that in the long-term those fleeting considerations are outweighed by the dangers of a
government beyond public scrutiny. As we have in the past, with this decision, we reinforce
that conclusion.

¶36 For these reasons, the judgment of the District Court is reversed in part and affirmed
in part.

/S/ TERRY N. TRIEWEILER

We Concur:


/S/ J. A. TURNAGE
/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER


Due to unavoidable circumstances, and the urgency with which this opinion was issued,
Justice William E. Hunt, Sr., was unable to sign the final opinion. However, he

concurs with
the result.
Justice W. William Leaphart, concurring in part and dissenting in part.

¶37  I concur in part and dissent in part.  In the interests of allowing the majority opinion
to issue as soon as possible, I will elaborate on my views at a later date.

/S/  W. WILLIAM LEAPHART