JUSTICE REGNIER
delivered the opinion of the Court.
¶1 The Associated Press, Inc., the Missoulian, the Great Falls Tribune, the Billings Gazette, KULR-TV, the Daily Interlake, KTVQ-TV, the Montana Newspaper Association, and the Montana Freedom of Information Hotline, Inc. (Appellants) appeal from the judgment entered in favor of the Montana Department of Revenue (Department) *235 by the First Judicial District Court, Lewis and Clark County. We reverse and remand.
¶2 We restate the issues presented on appeal as follows:
¶3 1. Whether Rule 42.2.701, ARM, violates Article II, Section 9 of the Montana Constitution?
¶4 2. Whether the Department may declare coal severance tax information confidential when it had been disclosed for a number of years prior to the promulgation of Rule 42.2.701, ARM?
¶5 3. Whether Rule 42.2.701, ARM, violates the public records statutes?
BACKGROUND
¶6 In 1975 the Montana Legislature enacted a coal severance tax. See § 15-35-103, MCA. To facilitate collection of the coal severance tax, each coal mine operator is required to provide the Department with a quarterly statement containing the tonnage produced, the average Btu value of the production, the contract sales price received for the production, and such other information as the Department may require. See § 15-35-104, MCA.
¶7 Following the enactment of the coal severance tax, the information provided to the Department by the coal mine operators was routinely made available to the public in the form of quarterly coal severance tax collection summaries prepared by the Department. The information contained in these summaries included the name of the coal company, the location of each coal mine by county, the total tons produced by each mine, the amount of tonnage exempt from taxation for each mine, the taxable production for each mine, the average contract sales price per ton for each mine, the total coal severance tax paid by each mine, the incentive tax credit (now expired), and the net tax paid by each mine.
¶8 On November 15, 1993, the Department adopted Rule 42.2.701, ARM, which declared information, such as tax returns, that taxpayers are required to provide to the Department and Department-prepared documents that identify taxpayers to be confidential. Pursuant to the adoption of the rule, the Department changed the quarterly coal severance tax collection summaries to include only the name of the coal company, the location of each coal mine by county, the total tons produced by each mine, the average sales price per ton for all Montana coal mines combined, and the total tax paid by all Montana coal mines combined.
*236 ¶9 On January 3, 1994, a Helena law firm representing the Montana Freedom of Information Hotline requested copies of the 1992 and 1993 quarterly coal severance collection summaries from the Department on behalf of the Associated Press pursuant to Article II, Section 9 of the Montana Constitution. Relying on recently adopted Rule 42.2.701, ARM, the Department denied the request on February 10, 1994, claiming that it had a responsibility to protect the privacy rights of all Montana taxpayers. However, in light of the public’s interest in this information, the Department indicated that it would be releasing a summary of statistical information including the total tons of coal mined by each company and the average price of coal and the total amount of severance tax paid for all Montana coal mines.
¶10 On July 14, 1994, Appellants filed an Application for Writ of Mandate and Petition for Declaratory Judgment, requesting the following relief:
1. A writ of mandate compelling the Department to provide Appellants with information and documents contained in the Department’s files that were provided to the Department pursuant to § 15-35-104, MCA.
2. An order declaring the provisions of Rule 42.2.701, ARM, to be invalid because it conflicts with § 2-6-102, MCA.
3. An order declaring the provisions of Rule 42.2.701, ARM, to be unconstitutional.
4. An award of reasonable attorney fees and costs to Appellants pursuant to § 2-3-221, MCA.
5. Any other relief the District Court deems just and proper.
The Department responded to the Appellants’ application by alleging, inter alia, that it failed to state a claim upon which relief could be granted and should be dismissed.
¶11 Subsequently, both parties moved for summary judgment regarding the validity of Rule 42.2.701, ARM. Appellants alleged that Rule 42.2.701, ARM, violates the public’s constitutionally guaranteed “right to know” in two respects. First, 42.2.701, ARM, conflicts with Montana’s public records statutes, which allow citizens the right to examine and copy all records held by the government. Second, Rule 42.2.701, ARM, directly conflicts with Article II, Section 9 of the Montana Constitution, which guarantees the public the right to inspect documents held by state agencies unless the demands of individual privacy clearly exceed the merits of public disclosure.
*237 ¶12 Regarding the constitutionality of Rule 42.2.701, ARM, the Department contended that it was validly enacted as an interpretive rule pursuant to its general rulemaking authority under § 15-1-201, MCA, with respect to supervision of the administration of all revenue laws of the state, and as such, it is constitutional. The Department also asserted that its purpose for adopting the rule was to inform the public of the Department’s procedures regarding the confidentiality of certain tax information.
¶13 The Department also asserted that Appellants were asking the District Court to ignore the taxpayers’ right to privacy guaranteed by Article II, Section 10 of the Montana Constitution. The Department went on to state that prior to authorizing release of the requested information, the District Court must first determine whether a privacy interest exists and if it does, then balance that interest against the public’s right to know. Further, the Department alleged that whether or not the taxpayers have a subjective expectation of privacy in the requested information is a factual question, necessitating the denial of summary judgment.
¶14 After the motions for summary judgment had been fully briefed and orally argued by the parties, the District Court entered its Decision and Order denying summary judgment in all respects. The basis for the District Court’s denial was that the issue of whether the taxpayers have a subjective expectation of privacy involves questions of fact, requiring an evidentiary hearing to determine the issue.
¶15 More than a year after the District Court had entered its Decision and Order, Appellants filed a Motion for Reconsideration. The basis for this motion was the Appellants’ belief that the District Court’s Decision and Order failed to address several dispositive arguments. Appellants stated that this case concerns the issue of whether Rule 42.2.701, ARM, is an invalid infringement on the public’s statutory and constitutional right to examine government records. Appellants went on to state that they were not challenging whether they were entitled to receive the information at issue; they were simply challenging the rule itself on constitutional and statutory grounds. Appellants argued, inter alia, that Rule 42.2.701, ARM, is facially unconstitutional because it fails to provide for a case-by-case determination concerning whether the demands of individual privacy clearly exceed the merits of public disclosure.
¶ 16 The Department opposed the Motion for Reconsideration on the grounds that Appellants’ motion was not allowed under the Montana *238 Rules of Civil Procedure; if allowed by Rules 59 or 60, M.R.Civ.P., it was time-barred; and Appellants had failed to provide the District Court with any new reasoning or legal precedent upon which the District Court should alter its decision. The Department also asserted that the District Court had previously determined Rule 42.2.701, ARM, to be valid as a matter of law. The Department further argued that the requisite balancing test was the foundation for the rule.
¶ 17 After the Motion for Reconsideration had been fully briefed by the parties, the District Court entered an Order denying the motion based upon its conclusion that the motion was untimely and without merit. At a subsequent scheduling conference, the District Court set the evidentiary hearing concerning the issue of the taxpayers’ subjective right of privacy for August 27, 1998.
¶ 18 Prior to the evidentiary hearing, the parties submitted proposed findings of fact and conclusions of law. In addition, the District Court entered a Pre-Trial Order, which was approved by the parties. Several witnesses testified at the hearing, including the former director of the Department during the time Rule 42.2.701, ARM, was promulgated; the former bureau chief for the Natural Resource Corporation Taxation Division of the Department; a certified public accountant; representatives from several Montana coal companies; and the Montana bureau chief for the Associated Press. At the conclusion of the hearing, the District Court offered the parties the opportunity to submit supplemental proposed findings of fact and conclusions of law within 30 days, which the parties did.
¶19 On December 29, 1998, the District Court entered its Findings of Fact, Conclusions of Law and Order awarding judgment to the Department. The District Court found that the Department adopted Rule 42.2.701, ARM, after balancing the public’s right to know with the coal producers’ right to privacy. In addition, the District Court concluded that the coal severance taxpayers had, and continue to have, a reasonable expectation of privacy with respect to the information they provide to the Department, which exceeds the public’s right to know. Appellants appeal from the District Court’s Findings of Fact, Conclusions of Law and Order awarding judgment in favor of the Department.
STANDARD OF REVIEW
¶20 “We review a district court’s conclusions of law to determine whether they are correct.” Brady v. Montana Dept. of Justice, 1999 MT 153, ¶ 6, 295 Mont. 75, ¶ 6, 983 P.2d 292, ¶ 6.
*239 ISSUE 1
¶21 Whether Rule 42.2.701, ARM, violates Article II, Section 9 of the Montana Constitution?
¶22 Appellants contend that Rule 42.2.701, ARM, directly conflicts with Article II, Section 9 of the Montana Constitution in that it fails to balance the competing interests of privacy and public disclosure on a case-by-case basis. Appellants also contend that the rule contains a facially unconstitutional presumption in favor of confidentiality. At oral argument, the Department alleged that its adoption of Rule 42.2.701, ARM, was premised on the balancing of the taxpayers’ right to privacy and the public’s right to know.
¶23 Rule 42.2.701, ARM, reads as follows:

PUBLIC ACCESS TO TAXPAYER INFORMATION

(1) The Montana Constitution guarantees individuals and corporations the right to privacy in Article II, Section 10. Under this provision of the Constitution, and in conjunction with various statutes in the Montana Code Annotated, the department will protect the privacy interests of taxpayers with regard to information they submit to the department.
(a) A protected privacy interest exists when a person expects the information they submit to remain private and that expectation of privacy is reasonable by societal standards.
(b) It is generally accepted that most taxpayers have a reasonable expectation that income and financial data and other information provided to the department will remain private, unless courts or the legislature have specifically recognized that the information is subject to public disclosure.
(2) The Montana Constitution guarantees the public’s right to know. The right-to-know provision of the Montana Constitution is intended to keep the public informed about the workings of state government. The public’s right to know must be balanced against the individual right of privacy.
(3) Information, such as tax returns, that taxpayers are required to provide to the department, and department-prepared documents, such as audit reports, that identify taxpayers are confidential, unless it is clear that a taxpayer does not have a protected privacy interest in information found in the documents.
*240 (4) Documents prepared by the department that do not identify taxpayers and their associated private information are not confidential and will be released.
(5)(a) The department considers the following to be confidential information based on the Montana Constitution:
(i) tax returns, certain reports and audits for natural resource taxes such as net and gross proceeds and severance taxes;
(ii) tax returns, certain reports and audits for miscellaneous taxes such as cigarettes, lodging facilities, and dangerous drugs; and
(iii) tax returns, certain reports and audits of alcoholic beverage taxes.
(b) The department considers the following to not be confidential information based on the Montana Constitution:
(i) information describing the physical characteristics of property or other information which is used to determine values for property tax assessments. Examples include personal property reports, real property record cards, and allocation reports;
(ii) information the department obtains from public sources rather than the taxpayer; and
(iii) statistical compilations of confidential information which do not identify sensitive information about taxpayers. Examples of these include oil and gas quantity reports provided to the board of oil and gas conservation, coal production reports which do not identify taxpayers, and masked individual income tax information which does not identify taxpayers.
(c) The list of taxes is not intended to be all inclusive but simply provide examples of information which is not covered by a specific statute. Statutes which require confidentiality are presumed constitutional.
(6) Confidential information must be provided to the taxpayer themselves, or to their designee. Requests for this information must be submitted by the taxpayer in writing to the department. These requests will be maintained in the files of the department. (History: Sec. 15-1-201, MCA; IMP, Montana Constitution, Art. II, Sections 8, 9, & 10; Attorney General Opinions 38-59 and 39-17; Secs. 2-4-501; 2-4-623; 2-6-109; 15-7- 308; 15-30-303; 15-31-507; 15-35-205; 15-38-109; 15-50-205; 15-50-206; 15-50-207; 16-3-211; *241 16-3-404; 16-11-120; and 16-11-122, MCA; NEW, 1993 MAR p. 2811, Eff. 11/25/93.)
¶24 The public’s right to know is contained in Article II, Section 9 of the Montana Constitution, which states:
Right to know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
This constitutional provision generally requires information regarding state government to be disclosed to the public, except in cases where the demand of individual privacy clearly exceeds the merits of public disclosure. Hence, the right to know is not absolute. See Missoulian v. Board of Regents (1984), 207 Mont. 513, 529, 675 P.2d 962, 971; see also Order Selecting the Fifth Member of the Montana Districting and Apportionment Commission (Aug. 3, 1999) (Regnier, J., specially concurring). It requires a balancing of “the competing constitutional interests in the context of the facts of each case, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure.” Missoulian, 207 Mont. at 529, 675 P.2d at 971 (emphasis added).
¶25 Based on the assumption that most taxpayers have a reasonable expectation that income and financial information provided to the Department will remain private, the Department declared such information, including tax returns, to be confidential, unless it is clear that the taxpayer does not have a protected privacy interest in the information. See Rule 42.2.701(3), ARM. Information required to be provided to the Department by taxpayers, including tax returns, as well as some Department-prepared documents that identify taxpayers are deemed confidential under Rule 42.2.701, ARM. This is in direct conflict with the public’s right to know contained in Article II, Section 9 of the Montana Constitution.
¶26 Rule 42.2.701, ARM, presumes that all taxpayers have a properly-recognized, constitutionally-protected right to privacy in the information they provide to the Department, which prevails over the merits of public disclosure. In order to determine whether the demands of individual privacy clearly exceed the merits of public disclosure, a balancing of the public’s right to know with the individual’s right to privacy in the context of the facts of each case is required.
*242 ¶27 As conceded by the Appellants in their reply brief in support of their motion for summary judgment, if Rule 42.2.701, ARM, were struck down as facially unconstitutional the Department could, nevertheless, withhold some or all of the requested information if it properly determined in the context of the facts of each particular case that the taxpayer’s right to privacy outweighed the merits of public disclosure. For instance, the type of taxpayer involved (i.e., individual, corporate, partnership, etc.), the source of the information provided by the taxpayer, and the public’s interest in the information provided are only some of the factors that will need to be considered when determining whether a taxpayer’s right to privacy outweighs the public’s right to know.
¶28 Conversely, Rule 42.2.701, ARM, declares information to be confidential on a wholesale basis for all taxpayers without balancing the taxpayers’ right to privacy with the public’s right to know. As a result, we conclude that Rule 42.2.701, ARM, is unconstitutional on its face.
¶29 In fight of our determination that Rule 42.2.701, ARM, is unconstitutional on its face, we need not address whether the rule violates the public records statutes. Therefore, Issue 3 will not be addressed.
ISSUE 2
¶30 Whether the Department may declare coal severance tax information confidential when it had been disclosed for a number of years prior to the promulgation of Rule 42.2.701, ARM?
¶31 Appellants assert that there can be no reasonable expectation of privacy in the information at issue in this case, the average contract sales price for each mine and the taxes paid by each mine. Due to the fact that this information had been made public for nearly 20 years, Appellants argue that this is not information in which members of the coal industry could have an actual expectation of privacy that society is willing to recognize as reasonable.
¶32 The Department, on the other hand, asserts that the District Court correctly determined that the coal severance taxpayers had, and continue to have, a constitutionally protected right of privacy in the information provided to the Department. The Department also asserts that there is sufficient evidence in the record to support the District Court’s findings of subjective and objective expectations of privacy on the part of the coal severance taxpayers in the information at issue.
¶33 Upon denying the parties’ cross-motions for summary judgment, the District Court conducted an evidentiary hearing to deter *243 mine whether the mine operators had a reasonable expectation of privacy in the information provided to the Department and, if so, whether there was a compelling state interest requiring disclosure of that information. Several coal company managers and officers, a certified public accountant, and a bureau chief for the Associated Press testified at the hearing. Based on the evidence and testimony presented, the District Court concluded that the coal severance taxpayers established a subjective and objective expectation of privacy with respect to the information provided to the Department in their coal severance tax returns. In addition, the District Court found that the taxpayers’ expectation of privacy outweighed the public’s right to know.
¶34 The fundamental issue presented by Appellants is whether the District Court erred when it determined that the coal severance taxpayers had, and continue to have, a constitutionally protected privacy interest in the information they provide to the Department. The issue of whether corporations or other business entities have a right of privacy pursuant to Article II, Section 10 of the Montana Constitution has not been raised by the parties on appeal. Therefore, for purposes of addressing this issue we will assume, without agreeing with the District Court, that corporations have a right of privacy.
¶35 In discussing the adoption and scope of the privacy clause in Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 440, 649 P.2d 1283, 1286, we noted that the Montana Constitution provides more privacy protection than the United States Constitution. To determine whether a constitutionally protected privacy interest exists under the Montana Constitution, we apply the following two-part test: “whether the person involved had a subjective or actual expectation of privacy and whether society is willing to recognize that expectation as reasonable.” Great Falls Tribune Co. v. Day, 1998 MT 133, ¶ 20, 289 Mont. 155, ¶ 20, 959 P.2d 508, ¶ 20.
¶36 Pursuant to § 15-35-104, MCA, each coal mine operator is required to compute the severance tax due on each quarter-year’s worth of production. Each quarterly statement must include the amount of tonnage produced, the average Btu value of the production, the contract sales price received for the production, and any other information the Department may require. See § 15-35-104, MCA.
¶37 Prior to the adoption of Rule 42.2.701, ARM, in 1994, coal mine operators had no assurance that the information submitted pursuant to § 15-35-104, MCA, would be kept confidential. Unlike the chapters *244 in Title 15 of the Montana Code Annotated involving individual income tax and corporate license or income tax, the chapter involving the coal severance tax does not contain a statutory provision declaring tax records to be confidential. See §§ 15-30-303 and 15-31-511, MCA.
¶38 The record reflects that prior to 1994, the Department disclosed certain coal production information in the form of a quarterly coal severance collection summary. Despite this, the testimony of the mine managers and officers at the evidentiary hearing indicated that they were not aware this information had been disseminated by the Department prior to 1994 and that if they had known they would have objected to it.
¶39 However, none of the coal mine managers or officers testified that prior to 1994 they expected the coal severance tax information submitted pursuant to § 15-35-104, MCA, to be kept confidential. They did testify that they would like this information to remain confidential because of the competition in the coal industry today, the problems it might cause with their customers who are paying more than the average price, and the possibility that the information could give their competitors an unfair advantage.
¶40 In response to the coal mine operators’ economic concerns, we note that in Great Falls Tribune Co., we concluded that economic advantage is not a privacy interest. Great Falls Tribune Co., ¶ 29. Furthermore, we fail to see how a competitor could determine the contract price of coal for a specific contract from the average contract sales price or the amount of severance tax paid by each mine. The information published before and after the adoption of Rule 42.2.701, ARM, does not reveal the number of contracts a coal mine has nor the type of contracts (i.e., short- or long-term or both). Several factors impact the price of coal paid by a purchaser, including the quality of the coal being purchased, whether the purchaser has a short- or long-term contract, and the transportation costs for delivery of the coal.
¶41 Given the fact that the Department did not restrict access to this information for nearly 20 years and that the coal mine operators within a highly regulated industry were given no assurances that this information would be kept confidential nor did they request that it be kept confidential, we conclude that prior to 1994 the coal mine operators within Montana did not have an actual or subjective expec *245 tation of privacy in the information submitted to the Department pursuant to § 15-35-104, MCA.
¶42 Following the adoption of Rule 42.2.701, ARM, the coal mine operators could assert a subjective expectation of privacy in the information provided to the Department pursuant § 15-35-104, MCA. However, a subjective expectation of privacy based on a facially unconstitutional rule is not one society would be willing to recognize as reasonable. We also note that this information had routinely been made available for nearly 20 years prior to the adoption of Rule 42.2.701, ARM. As a result, neither prong of the two-part privacy test has been met, ruling out the existence of a constitutionally protected privacy interest.
¶43 Appellants also assert that they should be awarded their reasonable attorney fees and costs incurred in bringing this action in accordance with § 2-3-221, MCA. Section 2-3-221, MCA, reads as follows:
Costs to plaintiff in certain actions to enforce constitutional right to know. A plaintiff who prevails in an action brought in district court to enforce his rights under Article II, section 9, of the Montana constitution may be awarded his costs and reasonable attorneys’ fees.
We have already concluded that Rule 42.2.701, ARM, is unconstitutional on its face because it does not balance the public’s right to know with the taxpayers’ right to privacy on a case-by-case basis in violation of Article II, Section 9 of the Montana Constitution. Hence, the Appellants have performed a service for the citizens of the State by enforcing a portion of our Constitution that would otherwise be violated. Due to the public benefits gained by Appellants’ efforts, the cost of the litigation should be spread among its beneficiaries. See Associated Press v. Board of Pub. Educ. (1991), 246 Mont. 386, 393, 804 P.2d 376, 380. Therefore, we remand this matter to the District Court pursuant to § 2-3-221, MCA, for an award of costs and reasonable attorney fees incurred by Appellants in bringing this action, including the fees and costs incurred on appeal.
¶44 Reversed and remanded.
CHIEF JUSTICE TURNAGE, JUSTICES HUNT, TRIEWEILER and GRAY concur.