JUSTICE NELSON
concurs.
¶33 I concur in our decision. I write separately to state my agreement with the Gazette that we should hold that the District Court’s discretion to deny attorney fees in right-to-know cases is not unfettered. Indeed, while discretionary, the award of attorney fees in right-to-know cases should be presumed, for the reasons set forth below.
¶34 The Gazette argues that the following factors must be taken into consideration in ruling on a fee request. This Court does not address these factors, presumably because the suggestion that we adopt them was raised in the Gazette’s reply brief.
¶35 Nonetheless, I agree that these factors should be part of the District Court’s calculus in determining whether to grant attorney fees in a right-to-know case. Specifically, the court should consider:
1. whether the governmental entity has produced undisputed portions of the requested materials;
2. whether the government has acted expeditiously to bring the dispute to resolution, including the provision of documents in camera for the district court’s analysis;
3. whether the government has timely produced a production log detailing its objections to production;
4. the delay involved;
5. the extent to which the government’s action in filing a declaratory judgment action is a pre-textual act designed to avoid timely production of the documents rather than an attempt to resolve legitimate disputes concerning privacy interests;
6. the extent to which privacy interests have been actually asserted by the affected parties; and
7. the good faith of government officials in complying with the statutory and constitutional requirements of public inspection.
*401 ¶36 There should be a presumption of awarding attorney fees to the prevailing plaintiff in right-to-know cases, and the process of making that award should be informed by use of the above standards for the following reasons.
¶37 The right-to-know guarantees of Article II, Section 9, of the Montana Constitution,[1] are among the most important guarantees that Montanans enjoy. As this right is contained in the Constitution’s Declaration of Eights, it is a fundamental right. State v. Tapson, 2001 MT 292, ¶ 15, 307 Mont. 428, ¶ 15, 41 P.3d 305, ¶ 15. In interpreting this provision, we have held that there is a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection. Great Falls Tribune v. Mont. Public Service Comm’n, 2003 MT 359, ¶ 54, 319 Mont. 38, ¶ 54, 82 P.3d 876, ¶ 54.
¶38 Additionally, we have held that this right to examine government documents, together with the public’s right of participation as provided for in Article II, Section 8,[2] imposes “an ‘affirmative’ duty on government officials to make all of their records and proceedings available to public scrutiny.” Great Falls Tribune, ¶ 54. Specifically, we stated:
In effect, Article II, Sections 8 and 9, of the 1972 Montana Constitution impose an “affirmative” duty on government officials to make all of their records and proceedings available to public scrutiny. Consequently,
there is a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection, regardless of legislation, special exceptions made to accommodate the exercise of constitutional police power, and other competing constitutional interests, such as due process.
[Associated Press, Inc. v. Department, 2000 MT 160, ¶ 85, 300 Mont. 233, ¶ 85, 4 P.3d 5, ¶ 85] (Nelson, J., specially concurring) (quoting Belth v. Bennett (1987), 227 Mont. 341, 344, 740 P.2d *402 638, 640) (emphasis added). Leaving to the public the duty to initiate the challenge of confidentiality of particular documents filed by [the Montana Power Company (“MPC”)] with the [Montana Public Service Commission (“PSC”)] under a “generic” protective order abrogates the PSC’s affirmative duty to make all of its records available to the public in the absence of specific findings by the PSC that the documents represented by MPC to constitute trade secrets or confidential proprietary information are indeed property interests which require constitutional due process protections.
Consequently, to the extent the PSC’s current procedural rules and/or common practices rely on mere representations of public utilities that the information contains trade secrets or other confidential proprietary information which warrants protection of a PSC order and/or application of other protective measures, the PSC has unconstitutionally shifted the initial burden of proof to the public to challenge a public utility’s claims of confidentiality. Thus, this creates a presumption of confidentiality which directly conflicts with the constitutional presumption of the public’s right to view all public records and of the PSC’s correlating constitutional affirmative duty to make its records and proceedings readily available to the public in the first instance.
Great Falls Tribune, ¶¶ 54-55.
¶39 Moreover, taking both the right to participate and the right to know together, we have stated as follows:
“Both [Section 8 and Section 9 of Article II] arise out of the increasing concern of citizens and commentators alike that government’s sheer bigness threatens the effective exercise of citizenship. The [Bill of Rights] committee notes this concern and believes that one step which can be taken to change this situation is to Constitutionally presume the openness of government documents and operations.”
Bryan v. Yellowstone County School District, 2002 MT 264, ¶ 31, 312 Mont. 257, ¶ 31, 60 P.3d 381, ¶ 31 (quoting Montana Constitutional Convention, Vol. II, Bill of Rights Committee Proposal, February 23, 1972, p. 631). Thus, in adopting Article II, Sections 8 and 9, the framers of Montana’s Constitution envisioned a transparent government-one in which the public was guaranteed coordinate rights to examine public documents and deliberations of public bodies at all levels of government and to participate in the operations and final decision-making of the government’s agencies.
*403 ¶40 Indeed, while the right to know may not, in all circumstances, be “absolute,” there is little doubt that, in cases where it is properly invoked, it is a right that is, at a minimum, equal to, and in most cases superior to, the right of individual privacy. In one respect, the right to know and the right of individual privacy are both on equal footing-they are both fundamental rights contained in Article II. However, in the context of right-to-know cases where the right of privacy is an issue, the right to know is most certainly superior. Article II, Section 9, states that no person shall be deprived of the right to examine documents “except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure” (emphasis added).
This plain and unambiguous language means that when the balance is even, the right to know trumps, thus requiring disclosure. In fact, even if the balance is slightly in favor of individual privacy, the right to know still trumps, thus requiring disclosure. It is only when the balance is clearly in favor of individual privacy that the documents may be properly withheld from the public. It is at this stage, and this stage only, that the right to individual privacy trumps the right to know.
Havre Daily News, LLC, v. City of Havre, 2006 MT 215, ¶ 69, 333 Mont. 331, ¶ 69, 142 P.3d 864, ¶ 69 (Nelson, J., concurring and dissenting).
¶41 The plain language of the Constitution requires that disclosure is the rule, and withholding public documents and information based on individual privacy is the exception. The term “except”[3] in Section 9 necessarily makes withholding information based on privacy the exception under elemental rules of statutory interpretation. Thus, the right to know is indeed superior in the sense that it presumptively trumps the right to individual privacy in these contexts.
¶42 And, if this plain language is not clear enough, the transcripts of the Constitutional Convention make it unquestionable. As the venerable Delegate Dorothy Eck stated, with regard to Section 9, “we added the word ‘clearly’ with the intention of tipping the balance in the favor of the right to know.” Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1670 (emphasis added). How much more clear can it be? The balance is tipped in favor of the right *404 to know-that, indeed, makes this right presumptively superior to the right of individual privacy in right-to-know cases where the two rights are in tension.
¶43 In this regard the framers of Montana’s Article II, Section 9, were uncannily foresighted. In December 2005, the New York Times reported that the National Security Agency (“NSA”) had been conducting a covert, warrantless program of monitoring international telephone calls and e-mails of thousands of persons suspected of links with terrorist organizations.[4] Then, in May 2006, another national newspaper, USA Today, broke the story that the NSA had been secretly collecting the phone call records of tens of millions of Americans using data provided by phone companies-these not limited to international calls, but including domestic calls made by ordinary Americans.[5] This sort of “data mining” has also been conducted on confidential financial information.[6] One federal court has ruled that some of these activities have been conducted in violation of the federal constitution.[7] Aside from these observations, it is not my purpose here to comment on these matters further, other than to point out the following.
¶44 The protection of our constitutional rights is in many cases dependent upon a vigorous and free press and an independent judiciary passionately committed to the rule of law and to the supremacy of the Constitution. The right of individual privacy is a case in point. As demonstrated by the foregoing references to the federal government’s secretive and warrantless data mining of personal information, the integrity and vitality of the right of privacy may well depend solely upon the individual’s ability to learn that his or her right has been violated. Indeed, in Montana, protection of the right of individual privacy may well rise and fall on the ability of the press to demand and then disclose public documents under Article II, Section *405 9; on the right of individuals to examine documents and observe the deliberations of public bodies or agencies at all levels of government under Article II, Section 9; and on an independent judiciary committed to supporting, protecting, and defending this constitutional scheme.
¶45 It was prescient of the framers of Montana’s Constitution to recognize that the right of individual privacy may well depend upon the right to know. And it was their farsightedness which requires that the scales-holding on one side privacy and on the other disclosure-be tipped in favor of the right to know, except where the demand for individual privacy clearly exceeds the merits of public disclosure. In cases brought under Article II, Section 9, the right to know is superior and disclosure is presumed.
¶46 From this presumption, it follows that public officers and bureaucrats do not own proprietary interests in public documents and information; they do not have the right to censor public documents and information; they do not have the right to close off the government’s deliberations from public scrutiny no matter how well-meaning or solicitous their intentions-with one, and only one, explicit constitutional exception: cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
¶47 Yet that is what is happening in Montana in too many instances. As the freedom of information audit conducted in the summer of2003 by various news organizations[8] demonstrated, requests of officials for specific public documents were met, on average, only 81 percent of the time. And in only 19 of 56 counties were all of the requested documents supplied. While some local government officials, when asked for public information, were willing, polite, and cheerful, others were rude, hostile, defensive, antagonistic, and parochial and demanded information regarding the identity of the requestor. In one case, the public official censored public information that “the public [didn’t] need to know about.”
¶48 Discussing this survey, Montana School of Law Professor Fritz Snyder recounts:
In 2003, a survey in Montana showed an 81 percent success rate in obtaining public information from public agencies. However, nearly half of Montana’s county sheriffs violated the state’s Open Records Law by refusing to release their jail rosters. *406 The sheriffs or their employees claimed the inmate lists were confidential. The Daniels County sheriff said he did not care what the law said: “He wasn’t about to let anyone see his list of recent crime calls without a court order.” “A District Court clerk in Chinook took it upon herself to censor the roster of court cases by removing ones ‘the public doesn’t need to know about.’ ” In six counties, officials said it would take a court order to get the information. “In all, just 11 counties provided the reports at the first request from the citizens making the checks.” Judith Basin County Sheriff Robert Jacobi said that his office “has a responsibility not to disclose the misfortunes of people in the community to anyone who walks in off the street.”
Fritz Snyder, The Right to Participate and the Right to Know in Montana, 66 Mont. L. Rev. 297, 317-18 (Summer 2005). (Among the items requested was a copy of each sheriffs report of the incident calls handled in the previous twenty-four hours.)[9]
¶49 The Montana Constitution has been the supreme law of this State for more than thirty years. It is wholly unacceptable that the media and public are still met with intransigence, stalling tactics, and delay, and are ultimately forced to litigate to obtain public documents to which they are constitutionally-and presumptively-entitled. We see far too many of these cases each year; and there are more waiting in the wings as we hand down this Opinion.
¶50 While awarding attorney fees is, as noted, discretionary, the sorts of abuses at issue in this case will continue ad infinitum unless the custodians of public documents appreciate that violations of the right-to-know provisions of the Constitution will, in the usual course, result in an award of attorney fees in favor of the requestor and against the local government. Adopting the above factors will guide the trial courts in that direction, and, therefore, I would adopt the same.
¶51 That said, the practicing bar must understand that this Court will avoid addressing these factors unless some litigant makes it an issue in the trial court. Therefore, I urge the media, or whichever citizen is next deprived of his or her fundamental right to know, to make these factors an issue in any demand for attorney fees and to raise the lower court’s denial of the use of these factors in the opening brief on appeal. *407 Presumably, since this matter is being remanded for reconsideration of the attorney fees question-a decision that, itself, will be appealable-the Gazette will do precisely that.
¶52 With that addition, I concur in our Opinion.

 Article II, Section 9, provides: “Right to Know. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.”

 Article II, Section 8, provides: Right of participation. The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.”

 The word “except” means “with the exclusion or exception of,” “to take or leave out,” and “on any other condition than that.” Merriam Webster’s Collegiate Dictionary 403 (10th ed., 1997).

 James Risen & Eric Lichtblau, Bush Lets U.S. Spy on Callers Without Courts, N.Y. Times A1 (Dec. 16, 2005).

 Leslie Cauley, NSA has massive database of Americans’ phone calls, USA Today (May 11, 2006).

 Josh Meyer & Greg Miller, U.S. Secretly Tracks Global Bank Data, L.A. Times A1 (June 23, 2006).

 American Civil Liberties Union v. National Sec. Agency, 438 F. Supp. 2d 754, 2006 WL 2371463, 2006 U.S. Dist. LEXIS 57338 (E.D. Mich. 2006).

 See Bob Anez, Review shows frequent violations of open records laws, Billings Gazette (Oct. 22, 2003), and Gazette Staff, Public records audit shows mixed, results, Billings Gazette (Oct. 22, 2003).

 Further study of the Freedom of Information Act survey to which Professor Snyder refers can be made at the Montana Associated Press website: http://www.ap.orgAnontanaMTFOI.html (last visited September 1, 2006). See also http://foi.missouri.edu/openrecseries/mt/countycompliance.html (last visited September 1, 2006).